## Case No. 7,527.

JORDAN v. WILKINS.

[3 Wash. C. C. 110.] [1]

Circuit Court, D. Pennsylvania. Oct. Term, 1811.

Before WASHINGTON, Circuit Justice, and PETERS, District Judge.

WASHINGTON, Circuit Justice. The principle laid down in the case from 5 Burrows, 2611, is, that one co-obligor or co-contractor, cannot be charged singly, if, in due time, he takes advantage of the plaintiff's omission to sue the others, who are also bound. by giving to him a better writ; which, by a plea in abatement he must do. But, if he fail to protect himself by such a plea, he cannot turn the plaintiff round, at the trial, by proving that another is jointly bound with him, and he is himself bound, severally, as well as jointly. This principle is certainly correct, in every case where the plaintiff gives notice to the defendant, of the nature of his demand, so as to put it in his power to plead in abatement. In actions on bonds, or special actions on the case, the declaration gives notice, and the rule is strictly applicable. But in actions of general indebitatus assumpsit, which this is, how is it possible for the defendant to know, whether the plaintiff means at the trial to give evidence of a joint or several debt, or both; and, in this state of ignorance. how can he plead in abatement? Upon the face of the declara-

[1] [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States. under the supervision of Richard Peters, Jr., Esq.]

tion, the claim is for a debt due from the defendant alone; and to permit the plaintiff to give evidence of a debt due from him and another, would be subversive of the rule, which declares that he shall not be made responsible singly, unless he has waived the privilege which the law allows him, of pleading in abatement.

We understand it to be the constant and established practice of this state, in actions of this sort, for the plaintiff to furnish the defendant, before he pleads, with a copy of the account which he means to offer at the trial. Where this is done, the defendant has notice as fully as if it had appeared on the face of the declaration; and we see no reason, why he may not shape his pleading, as if the declaration had been special, and plead in abatement. In this case, the account delivered by the plaintiff to the defendant, contains no item of a debt against John and Charles Wilkins; and, therefore, the defendant could not have known that such evidence would be offered at the trial, so as to put it in his power to plead in abatement.

It is very clear, that the defendant cannot plead in bar to a part, and in abatement to other parts of the action. And it is equally clear, that if the plaintiff joins in the same declaration, inconsistent counts, such as against the defendant singly, and against him as partner with some others, he must avail himself of this, by demurring to the declaration; because, if he would take advantage of his partner not being joined in the counts where he is sued for a partnership debt, he cannot plead in abatement, and also in bar to the other counts. But whether, if these inconsistent demands appear in the account rendered to him by the plaintiff, he can demur to a declaration correct on the face of it, may be a question. If he cannot the defendant ought, in some way or other, to be protected against the necessity of meeting such inconsistent demands at the trial.

PETERS, District Judge, was of opinion, that the account might be admitted; and the court being divided, the account went to the jury, to which the defendant's counsel took an exception.

The defendant then offered as an offset, a receipt by Charles Wilkins, of a certain sum of money, which Charles had paid to the plaintiff, on account of the defendant; having first proved, that this sum was paid by Charles Wilkins to the plaintiff.

BY THE COURT. This receipt is offered as evidence that the money paid by Charles Wilkins to the plaintiff, was paid for the account of the defendant. This would have been better proved by Charles Wilkins himself, who is alive, and might have been examined. The receipt, therefore, cannot be given in evidence.

The defendant then offered an account of money paid to the plaintiff, by John and Charles Wilkins, which was objected to.

BY THE COURT. This was said, by the defendant's counsel, to be precisely like the case which has, by a division of the court, been decided against the defendant. That since the plaintiff has been permitted to give in evidence a demand against John and Charles Wilkins, John, the defendant, ought to be at liberty to offset demands of John and Charles Wilkins against him. This has the appearance of fairness, particularly, as Charles will have to contribute to any judgment which may be recovered against John, for a debt of John and Charles. But still it is inconsistent with legal principles, for the defendant to offset a debt, which is due not to him alone, but to him and another. Were it to be allowed, the admission of it as an offset, would be no bar, in an action to be brought by John and Charles against the plaintiff; although one partner is bound singly, to pay the whole of the partnership debt, unless he compels the plaintiff, by a proper plea, to join his partner with him, yet he is not entitled to the whole of a debt due to the partnership; and if he sue singly for a partnership debt, he may be defeated at the trial on the general issue, for he knew who were his partners.

In summing up, it was contended, by the defendant, that the articles of the 15th December, 1803, constituted a partnership; that they were to share in loss in effect, since there can be no profit, but what remains after the losses are deducted; and that at all events, the advertisement at Natchez, was sufficient to bind them, as partners, to third persons. If so, then the defendant may be made liable for all the debts contracted by the plaintiff or his other partners; and it would be unreasonable for the plaintiff to recover even a separate demand, much less, those demands which were on partnership account, until the partnership accounts are settled, and a balance struck. As to the articles of dissolution, this is not binding on third persons; and the plaintiff, if he would avail himself of it, should have brought his action on this agreement, it being under seal. Case cited, 4 Term R. 670.

WASHINGTON, Circuit Justice (charging jury). To decide this cause correctly, it is necessary for the jury to have a very distinct conception of the nature of the connexion formed between the parties to the agreement on the 15th December, 1803. Each party was to carry on trade upon his own capital, credit, and responsibility. Neither was to be answerable in any manner, for the engagements of the others, nor were the whole to be answerable for the engagements of any one. There was to be a participation of profits, but not of losses. Thus, if the plaintiff had, on the business separately carried on by him, sustained a loss of 5,000 dollars, and the defendant, on his separate business, had made a profit of 10,000 dollars, upon the principle of co-partnership, the loss

of the plaintiff would be borne by the profit fund of the defendant, and not be left singly on the shoulders of the plaintiff; and only the remainder, viz. 5,000 dollars, would be divided. But in this case, the plaintiff would have to bear the whole loss of the 5,000 dollars, and would share with the other members of this association, in the 10,000 dollars made by the defendant. Purchases made by one of these parties, or moneys borrowed, either from another of the parties, or from a stranger, to enable him to carry on his separate store, was a private debt between those persons; as much so as if they never had formed a connexion of any kind. This was most unquestionably the case, as between the parties to that contract; and it could never be allowed to one of the parties, to repel the claim of another, who, by money lent or goods sold, had become his creditor, by saying it was a partnership debt, in the face of their agreement, which declared, that each party was to be severally bound for his own engagements. Indeed, we are not prepared to admit, that a stranger, who had dealt with one of these parties, with full knowledge of the articles, and of the true nature of the connexion between them, could charge the other partners. The advertisement published at Natchez, might possibly produce this effect; but as to that, we give no opinion, otherwise than by saying, that if it would bind all the parties for the engagements of one, to third persons, it would have no such effect, as between the parties themselves; who, notwithstanding any thing stated in that notice, knew very well the real nature of their connexion. If any possible doubt could exist, upon the articles of the 15th December, 1803, there can be none under those of the 19th September, 1804, which even destroy the community of profit, as to the business carried on separately by the parties, and contain an express stipulation, that each party shall be responsible for his own engagements. This, to be sure, would not affect the rights of third persons; but we hold it conclusive between these parties. The word copartnership, mentioned once or twice in this agreement, is of no consequence; it cannot alter the nature of things, and constitute a partnership, where, from the essence of the connexion, there was none. This paper not being the foundation of the plaintiff's action, may well be resorted to, to explain the nature of the connexion between these parties.

It is said, that it is hard to charge the defendant with the separate demands of the plaintiff, and yet leave him exposed to the claims of strangers, who have sued, and may yet sue him, as a copartner, for the debts contracted by the plaintiff. This is true, but it is not in this action that the defendant can be relieved. Although in the store transactions of these parties, they acted separately, and not as partners, yet, by the express terms of the agreement of the 19th September, 1804, they all agreed to share in profit and loss, as to purchases made at Natchez, by Steitz. Of course, should it appear to the jury, that any of the items in the plaintiff's account, arise on these transactions of Steitz, as, for example, if any of the bills drawn on the plaintiff, and now charged by him to the defendant, were drawn to enable Steitz to make the purchases, in the profit and loss of which all the parties were to participate, the jury will exclude such items from the plaintiff's account.