FRANK HANKEY and another *vs.* JOHN C. BECHT.

July 22, 1878.

**Partnership in Profits.**—One may be a partner in the profits of a business enterprise, without being partner or part owner in the property with which it is conducted.

**Verdict against Evidence.**—Sufficiency of evidence to sustain a verdict considered, and verdict set aside.

The plaintiffs, Frank Hankey and Nic Horn, brought this action in the district court for Ramsey county, against the defendant, for the wrongful taking and conversion of certain sheep. The defendant denied plaintiffs' title, and pleaded that the sheep were the property of one Arimond, and that he levied on and sold them by virtue of an execution directed to him as sheriff of Ramsey county, upon a judgment against Arimond and in favor of one Hardy. At the trial before *Wilkin*, J., the plaintiffs had a verdict; a new trial was refused, and the defendant appealed.

*Gilman & Clough*, for appellant.

*Rogers & Rogers*, for respondents.

GILFILLAN, C. J. From the evidence in the case, it appears that the sheep in controversy were bought in Chicago by Hankey, with the proceeds of three car-loads of cattle, sent from St. Paul to Chicago, and there disposed of by Hankey through his agent at that place. Of the three car-loads of cattle, one belonged to Hankey alone; in one, he was interested with Horn; and the other had been purchased by Arimond, the execution debtor, with money furnished by Hankey, under an agreement by which Hankey was to furnish the money, Arimond to buy the cattle and bring them to St. Paul, and they were then to be shipped to and sold in Chicago, and the parties were to divide the profits equally. This agreement made them partners in the business of buying and selling the cattle, and also in the ownership of the cattle. With

the price of this car-load, and part of the price of the other car-loads, Hankey bought the sheep, and had them brought to St. Paul. The cattle were shipped to Chicago and sold, and the sheep bought and shipped to St. Paul, in the name of Hankey alone. After the sheep arrived in St. Paul, Hankey and Arimond made an agreement, by which the latter was to kill and sell the sheep, and they were to divide the profits on the sheep equally. As the defendant levied on the sheep upon an execution against Arimond, the question in the case is, was he a partner in the ownership of the sheep? He might have been a partner in the business of preparing the sheep for sale, and selling them, without having any ownership in the sheep themselves. One may be a partner in a business, or in the profits arising from it, without being partner or part-owner in the property with which it is carried on. Story on Partnership, §§ 54–56; Parsons on Partnership, 47; *Wish* v. *Small*, 1 Campb. 331; *Ex parte Hamper*, 17 Vesey, 403; *Blanchard* v. *Coolidge*, 22 Pick. 151.

The court below instructed the jury, that the mere fact that Arimond was to have an interest in the profits of the sheep, after they were slaughtered and sold, would not give him a leviable interest in the sheep themselves. This is in accordance with the rule we have stated.

The court further instructed the jury, that "unless these sheep were bought with the proceeds of the cattle, with the understanding on the part of Arimond, that his profits were to go into them, or unless, after they were bought, he agreed with Hankey that his interest in the profits should be considered as represented by the sheep, and that he was to have an interest in the sheep, then he had no interest in the property which could be levied upon by the sheriff." This is simply a statement of the proposition that Arimond could not be made owner of an interest in the sheep, and bound by the investment in them of his share of the profits in the cattle, without his consent either previously or subsequently given,

as to the correctness of which proposition no question can be made; nor can there be any question that if he knew and consented, either before or after the purchase of the sheep, to the investment, in their purchase, of his share of the profits on the cattle, he became an owner of an interest in them. That he did know and consent, both before and after the purchase, is so clearly shown that the jury must have misapprehended the evidence in finding as they did. Arimond, in his testimony, states, "I know, of my own knowledge, what became of the proceeds of the cattle. I was present at the time the transaction transpired at Hall & Patterson's. (These were the Chicago agents who sold the cattle and bought the sheep.) As much as I know, they sold the cattle for the sheep, for the amount they realized from the cattle. Hall & Patterson told me he had a nice lot of sheep he thought it would be profitable to buy, and I told him to show them to me, so I could tell Mr. Hankey what kind of sheep they were." There is no contradiction of this evidence. The sheep were bought with the proceeds of the cattle, and sent to St. Paul, and after their arrival there the arrangement between Hankey and Arimond for their slaughter and sale, and the sharing in the profits, was made. It nowhere appears that Hankey's right to invest the whole proceeds of the cattle in purchasing the sheep was ever questioned between the parties. Nor does it appear that Arimond's interest in the sheep was ever denied, till the sheriff came to levy on them. The verdict is contrary to the evidence, and must be set aside.

Order reversed, and new trial ordered.