Rosenfield vs. Haight, imp.

*October 19 — November 3, 1881.*

*Whether contract one of partnership.*

By written agreement, H. was to "loan and advance" to M. N. and L. N., as copartners in business under the name of N. Bros., $5,000 from time to time as the interest of the business might demand; and such part of that sum as H. should advance, was to remain a permanent fund in said business during not less than one year nor more than five years from the date of the agreement, at the option of H., except as was therein otherwise stipulated. In consideration of the sum "so loaned and advanced" by H., N. Bros. agreed to devote their whole time and skill to said business, and to keep accurate and detailed accounts of the business, which were at all times to be open to the supervision and inspection of H. In consideration of the use of the money, N. Bros. agreed to pay H., once in every six months, three-fifths of the profits of said business, guarantying that such three-fifths should amount to at least $3,000 per annum. As security for the money advanced by H., he was to have a

lien upon all the stock, notes, accounts and other property of the firm, and might extend the agreement to a period of ten years. All moneys above $5,000 which H. might advance or loan to the firm, were to be loaned upon the same conditions. N. Bros. agreed to contract no debts outside of said business during the term of the agreement, and to use no funds or other property of the firm of N. Bros., except what might be necessary for their support. A violation of the contract by N. Bros. was to be "regarded as an end of the loan," and thereupon H. was authorized to take immediate possession of all company property, and sell the same, or a sufficient quantity thereof, to satisfy the amount of money advanced by him to the firm, and all sums due him from the firm. *Held*, that by this agreement H. became a *copartner* in the firm of N. Bros., and was liable on the note in suit executed by that firm.

APPEAL from the Circuit Court for *Winnebago* County.

Action against *A. Haight*, M. Neumann and L. Neumann on four promissory notes executed under the firm name of Neumann Bros. The complaint alleges that at the time of the making of said notes, all the defendants were partners doing business under that name. The defendant *A. Haight* answered by a general denial, and also filed his affidavit denying that he was a member of said firm at any time. The question raised by this affidavit was the only one litigated. At the close of plaintiff's evidence a nonsuit was granted on *Haight's* motion; and the plaintiff appealed from the judgment.

The contract between *Haight* and the Neumanns, upon the construction of which the question of partnership turned, is stated in the opinion.

The cause was submitted for the appellant on the brief of *Weisbrod & Harshaw:*

The contract between *Haight* and the Neumann brothers constituted a partnership between them. 1. They engaged to carry on a business for their mutual profit, one contributing the capital, the other the labor and skill. 2. There was a communion of profit and loss. (a) A stipulation to share net profits is in law and fact a stipulation to share losses. Story on Partnership, §§ 20, 21, 56; 20 Wis., 117; 7 Ohio St., 172.

(b) " It was a case where labor and skill were contributed to the business on one side, and capital on the other. There was necessarily a communion of profit and loss; or if there were no profits, or the business proved a losing one, [Neumann Bros.] would lose their labor and [*Haight*] his capital." *Upham v. Hewitt*, 42 Wis., 95. 3. There was a community of interest in the property. 4. There was the right to an account. In support of this view counsel cited Parsons on Partnership, 69; Story on Part., §§ 58–62; 3 Kent's Comm. (Comst. ed.), 20–25; Metcalf on Con., 114, 115, 117; Collyer on Part., §§ 10–40; 1 Smith's L. C., 491, notes to *W. v. C.; Whitney v. Ludington*, 17 Wis., 140; *Miller v. Price*, 20 id., 117; *Gilbank v. Stephenson*, 31 id., 592; *Upham v. Hewitt*, 42 id., 85; *Waugh v. Carver*, 2 H. Bl.; 235; DeGray, Justice, in *Grace v. Smith*, 2 W. Bl., 998; *Ex parte Hamper*, 17 Ves., 403; *Hickman v. Cox*, 18 C. B., 617; *Hesketh v. Blanchard*, 4 East, 144; *Purviance v. McClintee*, 6 S. & R., 259; *Greenwood v. Brink*, 3 T. & C. (N. Y.), 742; *Cox v. Delano*, 3 Dev. Law, 89; *Wood v. Vallette*, 7 Ohio St., 172; *Walden v. Sherbourne*, 15 Johns., 409; *Dob v. Halsey*, 16 id., 34–40; *Champion v. Bostwick*, 18 Wend., 175; *Catskill Bank v. Gray*, 14 Barb., 471; *Cushman v. Bailey*, 1 Hill, 526; *Manhattan Brass & Manuf'g Co. v. Sears*, 45 N. Y., 797; *Ontario Bank v. Hennessey*, 48 id., 545; *Leggett v. Hyde*, 58 id., 272; *Smith v. Bodine*, 74 id., 30; *Brigham v. Clark*, 100 Mass., 430; *Bucknam v. Barnum*, 15 Conn., 72; *Parker v. Canfield*, 37 id., 250; *Berthold v. Goldsmith*, 24 How., U. S., 542; *Ward v. Thompson*, 22 id., 330. *Haight* had an interest in the capital stock. The money advanced by him constituted a portion of the capital of the firm, and went into the general business. It was not payable back to him in all events. The profits were not to be applied towards paying it back. The distinction made in the New York cases seems to be, that when one is only interested in the profits of the business as a means of compensation for services rendered, he is

not a partner; but when he has an interest in the capital or business, and the profits are not paid him towards the extinguishment of the claim, then he is a partner. *Richardson v. Hughitt*, 76 N. Y., 55.

*A. Haight*, respondent, in person, contended that the contract in question related only to a loan of money and did not create any partnership. By its terms the respondent agreed to loan to Neumann Bros. $5,000; and, for the use of the money to be loaned, Neumann Bros. agreed to pay him absolutely $3,000 yearly, without any reference to whether the business produced any profits or not. The time of the loan was left at the option of *Haight*. In case Neumann Bros. violated any of the conditions of the contract, that was to be the "end of the loan," and *Haight* had a right to seize the property of Neumann Bros. and sell it at public auction to satisfy the debt. This was equivalent to a loan with a chattel mortgage security. *Haight* could claim his principal, and interest at the rate of $3,000 per annum, without any account of profit or loss being taken. There was no community of capital or of profits and losses. Certainly there was no joint agreement of the parties to share the profits *with each other*. Such an agreement did not create a partnership. *Cooper v. Tappan*, 9 Wis., 361; *Everett v. Coe*, 5 Denio, 180; *Richardson v. Hughitt*, 76 N. Y., 55; *Eager v. Crawford*, id., 97.

Cole, C. J. It is sought to hold the defendant *Haight* liable on the notes in suit, on the ground that he was a partner of Neumann Bros., by which firm the notes were executed. *Haight*, both by answer and affidavit, denies that he was a partner of that firm and responsible for the payment of the notes. The notes were given by Neumann Bros. in October and November, 1879, payable to the order of the defendant Wolcott, who indorsed them to the plaintiff before maturity. The question whether *Haight* was a partner of the firm of Neumann Bros. at that time, so as to be liable on the notes, mainly

depends upon what construction is placed upon the written agreement offered in evidence bearing date December 2, 1878, entered into between *Haight*, of the one part, and Morris and Lewis Neumann, copartners and manufacturers of cigars in the city of Oshkosh, of the other part. By that instrument *Haight* agreed to loan and advance to Morris Neumann and Lewis Neumann, as copartners under the firm name of Neumann Bros., the sum of $5,000, from time to time, as the interest and requirements of the business might demand; and such part thereof as *Haight* should advance was to remain a permanent fund in the business of manufacturing and selling cigars in the city of Oshkosh, for and during the term of not less than one year, nor more than five years, from the date of the agreement, at the option of *Haight*, except as was therein otherwise stipulated.

In consideration of the sum of $5,000 loaned and advanced by *Haight* to Neumann Bros., they agreed to devote their whole time and skill to the business aforesaid; to keep accurate and open account of all stock purchased for the business and prices paid therefor; also of all sales of cigars, the persons to whom sold, and the amount received therefor; also to keep a daily cash account of all sums received and paid out in said business; which books were at all times to be open to the supervision and inspection of *Haight*. In consideration of the use of the money, Neumann Bros. agreed to pay *Haight*, once in each and every six months, three-fifths of all the profits growing out of said manufacturing business; and Neumann Bros. guarantied that three-fifths of the profits of the business should amount to at least $3,000 per annum. As security for the money advanced by *Haight* to Neumann Bros., he was to have a lien upon all the tobacco, notes, accounts and other property of the firm, and had the option to extend the agreement for a period of ten years from date. All moneys above $5,000 which *Haight* might advance or loan the firm, it was provided should be loaned upon the same conditions. Neumann Bros.

bound themselves to contract no debts outside of the legiti-
mate business of manufacturing and selling cigars during the
term of the agreement, and they also agreed to use no funds
or other property of the copartnership of Neumann Bros. ex-
cept what might be necessary for their support. A violation
of the conditions of the contract by Neumann Bros. was " to
be regarded as an end of the loan," and thereupon *Haight* was
authorized to take immediate possession of all company prop-
erty and sell the same, or a sufficient quantity thereof to satisfy
the amount of money advanced by him to the firm, and all
sums due him from the firm. These are the material parts
of the agreement.

Now the learned counsel for the plaintiff insist that under
the terms of this agreement the defendant *Haight* indisputa-
bly became a partner of the firm of Neumann Bros., and is
responsible for its debts. They claim and argue that the in-
strument itself shows that *Haight* loaned the firm $5,000,
which was expressly made a permanent fund for carrying on
the business of manufacturing and selling cigars; that Neu-
mann Bros. made no promise nor entered into any obligation
to repay that loan at any time; and that the manifest intention
of the parties was that the sum loaned should remain and
constitute the capital while the partnership existed. This
sum, it is said, was to be used and employed in carrying on
the business, as well for the benefit of *Haight* as the other
members of the firm. Further, that no rate of interest for
the loan was agreed upon by the parties; that *Haight* was to
have three-fifths of the profits of the business for the use of
his money. It is said that he was to have that share of
the profits *as such;* had a right to have an account taken of the
business at the end of each six months, and a division of the
profits in that proportion, whatever they might appear to be.
The contention is that this clearly made him a partner within
the principles of law relating to partnerships.

This argument appears to us sound and incontrovertible.

But it is said, in answer to this view, that the intention of the parties was that *Haight* should receive three-fifths of the profits of the business as a mode of compensation for the use of his money, but that he was not to participate in the profits as such. On looking at the different clauses of the agreement, it is very clear to our minds that this construction is not correct. We have no doubt, in the language of the authorities, that *Haight* had an interest in the profits as profits, because he could claim at the end of each six months three-fifths of the profits specifically, whatever they might appear to be. Certainly he had the right, at that period, to insist upon an accounting, and a division of the profits. Neumann Bros. were prohibited from using the funds or other property of the copartnership during the continuance of the term, except such as might be necessary for their maintenance and support, showing that they were not the sole owners or proprietors of the concern. Probably there would not be any doubt upon this point were it not for the clause wherein Neumann Bros. guaranty that three-fifths of the profits should amount to at least $3,000 per annum. But that stipulation was obviously inserted for the benefit of *Haight*, and with the evident purpose of securing to him, at all events, that sum in case the business was not successful, or the anticipated profits were not realized. If *Haight* was to have an interest in the profits as profits, it is manifest there would necessarily be a community of loss as well as of profit involved in the agreement. In other words, there would be a partnership according to this common test.

But it is said the facts of the case are quite analogous to those involved in *Cooper v. Tappan*, 9 Wis., 361; *Ford v. Smith*, 27 Wis., 261; *Richardson v. Hughitt*, 76 N. Y., 55; and *Eager v. Crawford*, id., 97. In *Cooper v. Tappan* an agreement was made that a party was to receive as his share of the business $250 every six months, in consideration of $2,000 advanced to the concern, without any reference to the

fact whether the business produced a profit or not. Notes were given for the amount, payable every six months, and also for the sum advanced. That fact, and the additional fact that the payee was to have an absolute sum as his share of the profits, without reference to whether there were any profits or not, were strongly relied on as showing that there was no community of profit and loss in the business, or, in other words, that a partnership did not exist between the parties.

In *Ford v. Smith*, "there was no evidence proving or tending to prove an agreement to divide the profits *as such*. The division of the profits, if any, was at most a mere arrangement by which Imus was to obtain compensation for his labor and services, or as wages to be paid him." Page 266.

The case of *Richardson v. Hughitt* is more similar in its facts to the one at bar, but still that is distinguishable. The court construed the agreement in that case as amounting to a contract for a loan, and the provision as to profits being intended merely as a mode of providing compensation to the lender for the use of his money advanced. The lender there received the share of the profits, not as a partner, but on account of the debt owing to him by the firm; the court holding that he was only interested in the profits of the business as a measure of compensation for the use of his money. *Eager v. Crawford* is so unlike the present case that we do not deem it necessary to comment upon it. We think the case before us is more analogous to that of *Leggett v. Hyde*, 58 N. Y., 272; *Whitney v. Ludington*, 17 Wis., 140; *Miller v. Price*, 20 Wis., 117; *Upham v. Hewitt*, 42 Wis., 85. The case of *Leggett v. Hyde*, in its leading facts, is much like the one at bar. There it was held that "one who is interested in the profits of a business as profits, and not as a means of compensation for services, is a partner as to third persons, and is liable as such for the debts. Defendant H. loaned to the firm of A. D. P. & Co. $2,000, to be used in the business for one year, under an agreement that he was to receive one-third

of the profits, which were to be settled half-yearly, and at the end of the year, if he did not conclude to become a partner, he was to be repaid his $2,000 out of the concern." The court held (CHURCH, C. J., dissenting) " that the money so invested was used by the firm for the benefit of H.; that he had an interest in the profits as such, not as a measure of compensation, but as a result of the capital and industry; and that, as to the creditors of the firm, he was a partner." These head-notes correctly state the decision, which is quite instructive, and reviews many cases on this branch of the law. But still that case is distinguishable from the one at bar; for there the lender was to be paid his $2,000 if he did not become a partner. Here no provision is made, by any undertaking entered into by Neumann Bros., for the repayment of the money advanced; the only provision upon that subject being that, in case of a violation of any of the conditions of the agreement, the loan was to be regarded as at an end, and *Haight* was authorized to take possession of the property of the firm and sell it, and thus reimburse himself for all advances made. As we have said before, we cannot doubt that by the terms of the agreement he became a partner of the firm of Neumann Bros.

The judgment of the circuit court must therefore be reversed, and a new trial ordered.

*By the Court.*— So ordered.