SPAULDING, Respondent, vs. STUBBINGS, imp., Appellant.

*October 2 — October 17, 1893.*

*Partnership: Secret partner: Death of partner: Action on account: Promissory note: Judgment.*

1. A partnership is the contract relation subsisting between persons who have combined their property, labor, and skill in an enterprise or business, as principals, for the purpose of joint profit.

2. A contract between O. and S. recited that O. was engaged in carrying on a general merchandise business, and that S. had theretofore loaned him a certain sum, which was evidenced by a note. It provided that S. should allow said sum to remain with O. for five years; that O. should pay him interest at ten per cent. (the highest legal rate) on said sum and also one half of the net profits of said business, and should keep correct account books of the business, open at all times to the inspection of S.; and that during said term of five years the stock of goods of said business should not be sold out in bulk without the consent of both parties. S. made further advances for the benefit of the business, and was to some extent active in its management, but it was carried on in the name of O., and in letters to him S. referred to it as "your business." It appeared that S. desired that his connection with the business should be kept secret. *Held,* that O. and S. were partners in the business.

3. After the death of O. the business was carried on in the name of his administrator, with full knowledge and permission of S., in all respects as before, without any settlement; and S. continued to make advances to carry it on. *Held,* that the liability of S. as a partner continued.

4. Where an action is upon an account and also upon a note given for a part thereof, and the note is brought into court, the defendants are not prejudiced by the fact that the findings and judgment rest upon the account rather than the note, especially where no interest was allowed.

APPEAL from the Circuit Court for *Oneida* County.

In 1888, *Wilson H. Stubbings,* one of the defendants, resided in Evanston, Ill., and owned and was carrying on a store for the sale of merchandise at Marinesco, Mich.; and John O'Connor was engaged in business in a store in Eagle

River, Wis., where he resided. The nature of his business does not appear. Under date of August 8, 1888, at Eagle River, *Stubbings* and O'Connor made an agreement in writing, signed by *Stubbings* alone, the terms of which are as follows: "Agreement made between *W. H. Stubbings* and John O'Connor, this day and date, that the said *W. H. Stubbings* is to furnish the said John O'Connor such sums of money as may be agreed between them for the purpose of opening a general store, and is to receive for same interest at the rate of ten per cent. per annum for time it is in the business, payable semi-annually; and the said John O'Connor is to give security on all moneys advanced. The interest is to be paid out of the business, also the expenses of running the store, after which the profits are to be equally divided between the said *W. H. Stubbings* and John O'Connor, which will be done semi-annually, to wit, January 1 and July 1 of each year."

In part execution of such agreement to furnish money, *Stubbings* removed his stock of goods from Marinesco to Eagle River, and placed it in the store in which O'Connor was doing business, and the same became a part of the stock of merchandise in the general store mentioned in the agreement of August 8th, and was accepted by O'Connor as part performance by *Stubbings* of that agreement. *Stubbings* afterwards advanced to O'Connor divers sums of money on account of such business.

April 10, 1889, *Stubbings* and O'Connor had an accounting of the value of the Marinesco stock, and of the further sums of money thus advanced, and thereupon they entered into another written agreement, of that date, which is as follows: "Memorandum of agreement made this tenth (10th) day of April, A. D. 1889, by and between John O'Connor, of Eagle River, Oneida county, state of Wisconsin, and *Wilson H. Stubbings*, of Evanston, Cook county, state of Illinois, *witnesseth* as follows: Whereas the said

O'Connor is now, and for some time has been, engaged in carrying on a general merchandise business in Eagle River above named; and whereas said *Stubbings* has heretofore loaned to said O'Connor $14,611.50, which he hereby agrees to allow to remain with said O'Connor for a period of five (5) years from May 1st, 1889: *Now, therefore*, in consideration of the above, the said O'Connor hereby covenants and agrees with said *Stubbings* to pay to him interest at the rate of ten per cent. per annum on said sum of $14,611.50 (said sum, with interest thereon, being further evidenced by a note of even date herewith, between the parties hereto), and also one half of the net profits arising from the aforesaid business conducted by said O'Connor. The net profits aforesaid shall include all the profits arising from said business after deducting all current expenses, including rent of store and clerk hire. And said O'Connor hereby agrees to keep a true and correct set of books, showing all the accounts and transactions of said business, which said books and accounts shall be open at all times for the inspection of said *Stubbings* or his agent. This agreement shall bind the parties hereto, their heirs and assigns. It is further agreed that during said term of five years the said stock of goods in said business shall not be sold out in bulk without the consent of both parties hereto." At the same time O'Connor and his wife gave *Stubbings* their judgment note for the above sum of $14,611.50, payable five years after date, with ten per cent. interest, payable annually, and executed a mortgage on certain real estate situate in Oneida county, Wis., to secure the payment of such note. The note contains a stipulation that in case of any default in the payment of interest the whole principal shall become due at the option of *Stubbings*.

The business thus inaugurated at Eagle River was carried on by O'Connor until July 4, 1889, when he died. After his death, and with the knowledge and active co-operation

of *Stubbings*, the business was continued by the adminis-
trators of the estate of O'Connor, who were his wife and
his son, George O'Connor,— George having the sole man-
agement thereof,— and *Stubbings* continued to advance
money to carry it on.

During the lifetime of John O'Connor, plaintiff sold him
flour and other supplies to be used and disposed of in the
business at Eagle River, and continued to make such sales
to George O'Connor after the death of John, for the same
purpose.

This action is against *Stubbings* and George O'Connor to
recover an unpaid balance of $242.50, alleged to be due
plaintiff on account for such supplies, and on a note given
him by George O'Connor, as administrator, for a portion
of such account for supplies.   This note is for $451.49, and
eight per cent. interest.  It is dated June 29, 1891, and is
payable by its terms sixty days after date.  If payments be
applied to cancel the first items in the account, the whole
of such balance, and the portion of the account for which
the note was given, accrued after the death of John O'Con-
nor.   The action was brought on the theory that *Stubbings*
was a partner in the business at Eagle River with John
O'Connor, and that his liability as such continued after the
death of John.   The complaint charges that such partner-
ship existed, which allegation *Stubbings* specifically denies
in his answer, which also contains a general denial.  George
O'Connor did not answer.

Extensive correspondence was carried on between *Stub-
bings* and John O'Connor during his lifetime, and George
O'Connor after the death of his father, relative to the
Eagle River business.   Ninety letters thus written by *Stub-
bings* were read in evidence.   The character of many of
these letters is stated in the opinion.   Only one of the let-
ters written by either of the O'Connors to *Stubbings* is in
evidence.   It was written by George, who claimed therein
that *Stubbings* was a partner in the business.

The cause was tried without a jury, and the material facts found by the court which relate more directly to the question of partnership are as follows: "(1) That on the 8th day of August, 1888, the defendant *W. H. Stubbings* and one John O'Connor (father of the defendant George E. O'Connor) made and entered into an agreement in writing whereby, in substance, said *Stubbings* agreed to furnish said John O'Connor money for the purpose of opening a general store, and for which said O'Connor was to give security and to pay ten per cent. interest semi-annually out of the business, and, after paying the running expenses of the business, the profits of the business were to be equally divided between the said John O'Connor and the said defendant *W. H. Stubbings;* and thereupon and thereafter said merchandise business was conducted and carried on in the village of Eagle River, Oneida county, Wisconsin, for their mutual benefit. (2) On the 10th day of April, 1889, and pursuant to a verbal understanding, and after the money had been furnished by *Stubbings* as agreed, a second and additional agreement was entered into, embodying substantially the first agreement, and further providing that the money furnished in the business by *Stubbings* should remain in the business with said O'Connor for a period of five years from May 1, 1889. (3) That the defendant George E. O'Connor had general supervision of the business from the beginning, and in the absence of John O'Connor had full management and control. (4) That on the 4th of July, 1889, John O'Connor deceased. (5) That thereafter the defendant George E. O'Connor and Ann O'Connor, his mother, were duly appointed to administer on the estate of the said John O'Connor, deceased. (6) That from and after the said 4th day of July, 1889, and until the commencement of this action, without an accounting, and without any adjustment or settlement whatever of the deceased's interest in said business, and without any notice to the contrary, and with

full knowledge and permission of the defendant *W. H. Stubbings*, the said business was carried on and conducted in all respects the same after the decease of the said John O'Connor as before, except, in place of John O'Connor, the firm name was usually written George E. O'Connor, administrator for the estate of John O'Connor, deceased. (7) That during said time, and after said John O'Connor's decease, the defendant *W. H. Stubbings*, who resided at or near Chicago, continued to furnish money and credit to said firm and business carried on by George E. O'Connor, administrator, etc. (8) That no adjustment or settlement of said business between the defendants or between the estate of John O'Connor and the defendant *W. H. Stubbings* was had or made previous to the commencement of this action."

The remaining findings of fact relate to the plaintiff's account in suit, and fix the balance due him at $693.99. No mention is made therein of the note in suit, but the findings rest on the open account, including the portion thereof for which the note was given. The conclusions of law are as follows: "(1) That the defendant *W. H. Stubbings* was a partner to and with John O'Connor, and liable as such to the plaintiff. (2) That, having continued said business, or permitted the same to be continued, after, in all respects the same as before, the decease of John O'Connor, without an accounting and settlement with the estate of the deceased, and without notice to plaintiff, who continued dealing with the firm, the defendant *Stubbings'* liability as a partner to plaintiff was and is continued. (3) The plaintiff is entitled to judgment as prayed for in the complaint." Judgment was thereupon entered for plaintiff, against both defendants, for the balance thus found due him. Defendant *Stubbings* appeals from the judgment.

For the appellant there was a brief by *Alban & Barnes*, attorneys, and *Gabe Bouck*, of counsel, and oral argument by *John Barnes* and *Gabe Bouck*. They contended, *inter*

*alia,* that the receiving of part of the profits in lieu of or in addition to interest does not make the parties partners. *Meehan v. Valentine,* 145 U. S. 624; *Wilson v. Edmonds,* 130 id. 472, 482; *Richardson v. Hughitt,* 76 N. Y. 55; *Curry v. Fowler,* 87 id. 33; *Cassidy v. Hall,* 97 id. 159; *Wilson Printing Co. v. Bowker,* (C. P.) 42 N. Y. St. Rep. 34; *Waverly Bank v. Hall,* 150 Pa. St. 466; *Smith v. Knight,* 71 Ill. 148; *Williams v. Soutter,* 7 Iowa, 435, 446; *Boston & C. S. Co. v. Smith,* 13 R. I. 27; *Horton v. New Pass G. & S. M. Co.* 21 Nev. 184; *Nelms v. McGraw,* 93 Ala. 245; *Mollwo, Marsh & Co. v. Court of Wards,* L. R. 4 P. C. 419, 435; *Badeley v. Bank,* 38 Ch. Div. 238; *La Flex v. Burss,* 77 Wis. 538; *Nicholaus v. Thielges,* 50 id. 492; *Ford v. Smith,* 27 id. 261; *Cooper v. Tappan,* 9 id. 361.

For the respondent there were briefs by *Levi J. Billings,* attorney; and *Miller & McCormick,* of counsel, and oral argument by *Mr. Billings* and *Sam S. Miller.*

Lyon, C. J.　If defendant *Stubbings* is liable in this action, he is so liable because he was a partner with John O'Connor, during his lifetime, in the Eagle River business, and allowed the business to be continued on the same basis by the administrators of John O'Connor's estate after his death. We have no case here for the application of the doctrine of estoppel against *Stubbings* because he held himself out to plaintiff as a partner in the business. The plaintiff testified he was told by John O'Connor, just before his death, that *Stubbings* had an interest in the business, and that was all. If plaintiff was a competent witness to give this testimony (which counsel for *Stubbings* deny) it fails to prove that *Stubbings* held himself out to plaintiff as a partner with O'Connor in the Eagle River business. It does not appear that plaintiff took the trouble to inquire of *Stubbings* or any other person what that interest was, if it existed, or to ascertain whether the business was con-

tinued on the same basis after the death of John O'Connor; and there is no satisfactory proof that plaintiff relied upon the fact that *Stubbings* was a partner in the business when he gave credit to John O'Connor, and, after his death, to his administrators. Hence the first and principal question is, Were John O'Connor and *Stubbings* partners *inter se* in the Eagle River business before and at the time of the death of John O'Connor?

Among the numerous definitions of a "partnership" to be found in the treatises on that subject, many of which definitions are collected in 1 Lindl. Partn. 2, and in 17 Am. & Eng. Ency. of Law, 828, we think the definition formulated by Mr. Bates in his late work on that subject is as accurate and satisfactory as any we have seen. This definition seems to be preferred by the learned writer of the article entitled "Partnership" in such encyclopædia. It is as follows: "A partnership is the contract relation subsisting between persons who have combined their property, labor, and skill in an enterprise or business, as principals, for the purpose of joint profit." 1 Bates, Partn. § 1. It is said by Mr. Lindley that "partnership, although often called a contract, is in truth the result of a contract; the *relations* which subsist between persons who have agreed to share the profits of some business, rather than the *agreement* to share such profits." 1 Lindl. Partn. 2. Hence it is not essential to the existence of a partnership that it be so denominated in the contract of the parties; nor is it necessarily fatal thereto if the parties declare in such contract that they do not intend to become partners. The real inquiry always is, Have the parties by their contract combined their property, labor, or skill in an enterprise or business, as principals, for the purpose of joint profit? If they have done so, they are partners in that business or enterprise, no matter how earnestly they may protest they are not, or how distant the formation of a partnership was

from their minds.  The terms of their contract given, the law steps in and declares what their relations are to the enterprise or business and to each other.

The learned counsel for *Stubbings* contends that only the agreement of April 10, 1889, can be considered in determining the question of partnership.  This alone of the two agreements above mentioned is set out and relied upon in the complaint to establish a partnership between *Stubbings* and John O'Connor.  While we think the same effect should be given to both contracts, construed together, that should be given to the contract of April 10, 1889, excluding the other, we are willing to adopt the view of counsel, and confine ourselves to giving construction to the latest contract. That instrument in form fixes the amount of money loaned by *Stubbings* to John O'Connor at the sum of $14,611.50, and binds the latter to repay it in five years, with ten per cent. interest, payable annually.  The instrument recites that O'Connor is engaged in carrying on a general merchandise business in Eagle River, and provides that he shall pay *Stubbings* one half of the net profits of such business; that O'Connor shall keep correct account books of the business, which shall be open at all times to the inspection of *Stubbings* or his agent; and that during five years the stock of goods in the business shall not be sold in bulk without the consent of both parties thereto.  It will be observed that this agreement does not specify what O'Connor had done or should do with the $14,611,50, nor the consideration for the stipulation to give *Stubbings* one half of the net profits of the business.  Such share of the profits could not have been given as additional interest, because the agreement provided for paying him the highest legal rate of interest in this state, independently of the profits. Neither was it for services in the business, for *Stubbings* did not stipulate to perform services therein.  The conclu-

sion is almost irresistible that it was inserted to fix the pro-
portionate share of *Stubbings* in the business.

It will also be observed that in the contract of April 10th
*Stubbings* did not agree to make any further loans or ad-
vances to O'Connor; neither does it contain any provision
that O'Connor should be responsible therefor should any
further advances be made. *Stubbings* made further ad-
vances, however, for the benefit of the business, and it does
not appear that any time was fixed for repayment thereof,
or that he demanded any voucher or security therefor.    It
is not reasonable to believe that he would thus have parted
with his money if he was not interested with O'Connor in
the business as a principal.

Moreover, the letters of Stubbings in evidence show that
the proposition to start the business at Eagle River was
first made by him; that he purchased much stock for the
store; that he advised, if he did not dictate, of whom
O'Connor should make purchases, as well as prices and
terms; that he arranged for credits; and that he carefully
watched and freely interfered with all the details of the
business, so far as he could obtain knowledge of those de-
tails by persistent requests to the O'Connors to furnish
him detailed information thereof.    In short, he exercised
an influence in, and assumed a control over, the manage-
ment of the business (which was acquiesced in by the
O'Connors) entirely incompatible with the idea that he
was merely a creditor of O'Connor for the amount of his
advances and interest thereon, which can only be satisfac-
torily accounted for on the theory that he was handling
and directing his own business.

The foregoing considerations impel our minds to the con-
clusion that, under the contract of April 10th, *Stubbings*
and John O'Connor combined their property, labor, and
skill in the Eagle River business as principals, and of course

they did so for their joint profit, for the contract gives each one half the net profits. This makes them partners in the business, within the rule above stated. The contract is strikingly like that under consideration in *Rosenfield v. Haight*, 53 Wis. 260, which this court held created a partnership relation between the parties to it.

The fact that the business was conducted in the name of John O'Connor, and, after his death, in the name of the administrator of his estate, and the further fact that in *Stubbings'* letters to each of them the business was usually referred to as "your business," are not significant, for it appears that, for reasons satisfactory to himself, *Stubbings* desired that his connection with the business should be kept secret.

The finding that the business was continued after the death of John O'Connor in the name of his administrators, or one of them, with full knowledge and permission of *Stubbings*, and was conducted in all respects as before, without any notice to the contrary or adjustment of the partnership business, and that *Stubbings* continued to make advances to carry it on, are fully sustained by the proofs. It requires no argument to show that in such case the liability of *Stubbings* as a partner is continued.

The findings of the court are criticised because they ignore the note sued upon and go upon the open account of plaintiff alone. The note was given for a part of such account, but it is not a payment thereof. The note was brought into court, and the defendants are not prejudiced because the findings and judgment rest upon the original account rather than upon the note. A computation shows that no interest was allowed on the account; hence the judgment is more favorable to defendants than it would have been had it been upon the note.

*By the Court.*— The judgment of the circuit court is affirmed.