Wade v. Hornaday.

No. 18,619.

H. H. WADE, *Appellee*, v. W. E. HORNADAY et al. (H. A. MARTIN et al., Partners, etc., *Appellants*).

SYLLABUS BY THE COURT.

1. PARTNERSHIP—*Matter of Contract—Neither Participation in Profits nor Parties Calling Themselves Partners is Conclusive of a Partnership.* Partnership is a matter of contract and courts will not create such a contract against the will of a party. A definition of partnership which is at once accurate, comprehensive and exclusive is extremely difficult. Participation in the profits is only regarded as a circumstance to be considered in determining whether or not a partnership existed. The mere fact that the parties called themselves partners and referred to their business relation as a partnership will not necessarily make them partners nor their business a partnership.

2. SAME—*Contract in this Case Did Not Create a Partnership.* In this case it is held that an arrangement between three persons for a division of the net profits accruing on certain sales of shares of stock in lieu of office rent and services furnished by one, advertising and printing furnished by another, and the services of the other in the sale of the stock and in the advertising and correspondence, did not create a partnership in the sense that one could bind the others by a contract made in the name of all.

Appeal from Douglas district court; CHARLES A. SMART, judge. Opinion filed May 9, 1914. Reversed.

*R. E. Melvin, Hugh Means,* and *Raymond F. Rice,* all of Lawrence, for the appellants.

*W. B. Brownell, H. H. Asher,* both of Lawrence, and *E. A. Scholer,* of Kansas City, Mo., for the appellee.

The opinion of the court was delivered by

PORTER, J.: The question involved is whether a partnership existed between H. A. Martin and J. L. Brady, the appellants, and W. E. Hornaday, by which the appellants were bound to answer for an indebted-

ness incurred by Hornaday in the name of the partnership. The action was brought to recover for certain advertising printed in the Kansas City *Drovers Daily Telegram,* the account having been assigned to the appellee. The advertisement invited subscriptions to the capital stock of the United States Rapid Mail Service Company, a corporation, with which on or about July 3, 1909, Hornaday had entered into an agreement to sell 1500 shares of its capital stock. On July 20, 1909, H. A. Martin and J. L. Brady, the appellants, entered into an arrangement or contract with Hornaday whereby they undertook to render him certain assistance in the sale of 250 shares of the capital stock above referred to. Neither Martin nor Brady authorized the insertion of any advertising in the *Daily Telegram,* and neither of them knew of its publication until long afterwards. If they are liable in this case it must be on the theory that by their agreement with Hornaday a partnership was created which gave him authority to bind them upon any contract for advertising which he might see fit to make in furtherance of the sale of stock, whether or not they were jointly interested therein, for it appears that the advertisement mentioned not only the 250 shares of stock in the sale of which the appellants were interested, but also other shares of stock in the same corporation. The jury returned a general verdict in favor of the plaintiff. From the judgment Martin and Brady have appealed.

The contract between the appellants and Hornaday recites that Hornaday had undertaken under a contract with the United States Rapid Mail Service Company to sell 250 shares of its capital stock at a certain price, and that Brady and Martin desired to work in cooperation with him in the sale of the stock for their mutual benefit and gain; that Hornaday should have charge of the sale of the stock and of the advertising and correspondence; that J. L. Brady was to furnish the free use of the columns of the *Lawrence Journal* and

such advertising and reading notices as should be deemed necessary to sell the stock, and in addition should "supply needed job printing free to this partnership." Martin was to allow the free use of his offices in Lawrence for the sale of the stock and also to assist in selling the same to the best of his ability. The contract provides that Hornaday should bear his own traveling expenses and that additional expenses in connection with the sale of the stock should be borne equally between the parties. There is a provision that the profits on the sale of the stock over and above 25 per cent of the par value, which was to be paid to the company issuing it, should be divided equally between the parties to the agreement, each to receive one-third. Nothing is said with respect to losses.

The question is, Did the contract, conduct and proceedings of the appellants constitute them partners as to third persons? As a test of partnerships the so-called net-profit rule, which dates back to the year 1775, has, since 1860, been abandoned as a result of the decision in *Cox v. Hickman,* 8 H. L. Cas. 268. Prior to 1860 mere participation in the profits, regardless of the intention of the parties, was by the English courts held conclusive of the liability of the participant to the creditors of the concern. The change in the rule in England was readily adopted by the American courts, and since then the fact that there was to be a participation in the profits is only regarded as a circumstance to be taken into consideration with all the circumstances and the whole transaction in determining whether or not a partnership existed. (*Shepard v. Pratt,* 16 Kan. 209, 213; *Beard v. Rowland,* 71 Kan. 873, 81 Pac. 188; *Weiland v. Sell,* 83 Kan. 229, 109 Pac. 771; and see the cases cited in Note, 18 L. R. A., n. s., 963, 1006.) Numerous attempts have been made to formulate a definition of partnership, but it has been said to be beyond the capacity of courts to make a definition which is at

once accurate, comprehensive and exclusive. (*Langley v. Sanborn*, 135 Wis. 178, 114 N. W. 787.)

In *Fechteler v. Palm Bros. & Co.*, 66 C. C. A. 336, 133 Fed. 462, Judge Lurton expressed the opinion that "it is not very prudent to define a partnership." (p. 340.) The mere fact that the parties call themselves partners or refer to their business relation as a partnership will not necessarily make them partners nor make the business a partnership. (*Thompson v. Holden*, 117 Mo. 118, 22 S. W. 905; *Jordan v. Wilkins*, 3 Wash. C. C. Rep. 110; *Sailors v. Nixon-Jones Printing Co.*, 20 Ill. App. 509.) On the other hand, a contract may create a partnership although there is no mention in it of the word. (*Johnson Bros. v. Carter & Co.*, 120 Iowa, 355, 94 N. W. 850; *Griffen v. Cooper*, 50 Ill. App. 257; *Spaulding v. Stubbings*, 86 Wis. 255, 56 N. W. 469, 39 Am. St. Rep. 888.) It has also been repeatedly declared that a man can not be made a partner against his will, by accident, or by the conduct of others, for the reason that partnership is a matter of contract. (*Cook v. Carpenter & Cook*, 34 Vt. 121, 80 Am. Dec. 670; *Freeman v. Bloomfield*, 43 Mo. 391.) Nor will it arise by operation of law. The courts will no more create such a contract against the will of a party than they will contracts of any other character. (*Fairly v. Nash*, 70 Miss. 193, 12 South. 149; *Phillips v. Phillips*, 49 Ill. 437; *Hankey v. Becht*, 25 Minn. 212.) So that the fact that the appellants in this case signed a contract which defined the relation between themselves and Hornaday as a "partnership" is of very slight consequence.

We think it is clear that under the contract in question no partnership was created; that is, no commercial or trading partnership. The arrangement was formed not for the purpose of buying and selling stock in general, nor did it contemplate the general sale of the stock of the particular corporation mentioned in the

agreement; it was for the sole purpose of selling on commission 250 shares of that stock in the city of Lawrence. Similar arrangements between parties for sharing both profits and losses in a single venture, where the division was clearly intended to be in lieu of compensation for services or of office rent and advertising, and matters of that kind, have been held not to create a partnership in the sense that one partner could bind the other by his contract. In *Lee v. National Bank,* 45 Kan. 8, 25 Pac. 196, a partnership was formed for the purpose of carrying on a real estate, loan and insurance business on commission, but it was held to be a nontrading partnership. In *Shepard v. Pratt,* 16 Kan. 209, 213, and in *Beard v. Rowland,* 71 Kan. 873, 81 Pac. 188, it was ruled that profit-sharing is not an unfailing test of the existence of partnership, but merely a fact which may be taken into consideration to determine the question, and is often controlled by other considerations. In *Weiland v. Sell,* 83 Kan. 229, 109 Pac. 771, it was held that the arrangement for a division of the net profits or commissions on certain sales in lieu of office rent and advertising did not create a partnership, and that the sharing of the profits was a circumstance overborne by other controlling facts.

In *Horn v. Newton City Bank,* 32 Kan. 518, 522, 4 Pac. 1022, the distinction was drawn between a nontrading partnership and a commercial or trading one. In that case it was held that Horn and Long were partners only in the running of a threshing machine, and it was said that "such a partnership is one of occupation or employment only. It is not a commercial or trading partnership" (p. 522), and although the contract provided for a division of the profits and losses equally, it was held that whoever deals with an individual jointly interested with another in such a matter "must, at his peril, inform himself of the nature of the partnership" (p. 522).

The present case falls within the principle of many cases which have arisen where parties undertake jointly a single enterprise or venture, as, for instance, that of buying a tract of land and selling it again at an advance, the profits or losses to be shared equally, the profits to be in lieu of services in the joint enterprise undertaken, that of selling the particular land. Arrangements like these have repeatedly been held not sufficient to constitute a partnership. (*Gottschalk v. Smith*, 156 Ill. 377, 40 N. E. 937; *Adams v. Funk*, 53 Ill. 219; *Coward v. Clanton*, 122 Cal. 451, 55 Pac. 147; *Sain v. Rooney*, 125 Mo. App. 176, 101 S. W. 1127.) A case in point is that of *Bruce v. Hastings*, 41 Vt. 380, 98 Am. Dec. 593. In the opinion it was said:

"But we think a partnership does not arise on the agreement which the evidence tends to show was made between these parties. . . . It was not an agreement to put in capital and labor for the purpose of trade generally, but the agreement, as shown by the evidence, was limited to a single specific purchase by the defendant, with the understanding that the property should be sold as soon as a purchaser or purchasers could be found, and that the defendant would give the plaintiff one-half that should be made in the enterprise, in consideration of his agreement to aid and assist the defendant in carrying out his contract with Nelson. The form of the contract has very much the appearance of being a mode of determining the plaintiff's compensation for the assistance which he contributed to the defendant in the purchase and sale of the property." (p. 383.)

The contract itself shows that there was no commercial or trading partnership formed. The court should have sustained a demurrer to the evidence. The judgment will be reversed and the cause remanded with instructions to render judgment in favor of the defendants.