## GAUSS & SONS v. BAINBRIDGE F. HOBBS.

1. PARTNERS; *Unauthorized Contract, by One, Before Partnership Formed, not Binding on the Other.* Where P. and H. have a conversation about forming a copartnership, but do not enter into any agreement with reference thereto, P. cannot afterward without the knowledge or consent of H., contract a debt or obligation in the name of P. & H. and thereby make H. responsible for such debt or obligation.

2. —————— *Partnership, no Ratification of Prior Contract.* And where such a conversation has been had between P. and H., and such a debt or obligation has afterward been contracted by P. in the name of P. & H., without the knowledge or consent of H., and P. and H. afterward form a copartnership under the name of P. & H., and H. still has no knowledge that such debt or obligation was contracted, but some time after forming such partnership he obtains such knowledge, *held*, that H. is not liable for such debt or obligation, unless after forming such partnership he does something from which it may be inferred that he intends to assume, or that the partnership shall assume, such debt or obligation.

*Error from Mitchell District Court.*

ACTION by *C. W. Gauss & Sons*, merchants, of St. Louis, Mo., against James A. Pope and *Bainbridge F. Hobbs.*

Trial at December Term 1875 of the district court, and judgment in favor of plaintiffs and against defendant Pope for $387.02, and costs, as upon default; and judgment in favor of defendant *Hobbs*, and against the plaintiffs, for costs. *Gauss & Sons* appeal from this last judgment, and bring the case here on error.    The facts are fully stated in the opinion.

*A. J. Banta*, for plaintiffs.

*W. W. Guthrie*, for defendant.

The opinion of the court was delivered by

VALENTINE, J.: The plaintiffs in error Gauss & Sons, brought this action against James A. Pope and Bainbridge F. Hobbs as partners, under the firm-name of "Pope & Hobbs," on an account for goods alleged to have been sold and delivered to said Pope & Hobbs.    Pope made default, but Hobbs answered, denying his liability for said goods.    A trial was had by jury between the plaintiffs and the defendant Hobbs.    Hobbs admitted on the trial that said account was correct, and that there was an unpaid balance due thereon of $387.02, but simply denied his own liability thereon.    No question was raised in the court below concerning the admissibility of any evidence, or with regard to any of the instructions of the court to the jury.    None of the instructions are brought to this court, and therefore it must be presumed that they were all entirely satisfactory to the plaintiffs below, who are now the plaintiffs in error.    The jury found generally in favor of the defendant Hobbs, and also made several special findings.    The plaintiffs moved the court for judgment on the special findings of the jury, which motion was overruled. The plaintiffs then moved for a new trial, on the ground that both the general verdict and special findings were against the evidence, which motion was also overruled.    Judgment was given in favor of Hobbs and against the plaintiffs for costs. The plaintiffs assign said three rulings of the court below for error.

I. We shall consider the second of said rulings first.    Does

the evidence sustain the verdict and the special findings of the jury? The most of the facts were undoubtedly proved to be just as the jury found them to be. But with respect to some of the other facts, the evidence was so contradictory and inconclusive that the jury might have found either way, and might have given the verdict to either party. There was really sufficient evidence introduced on the trial by each party, if it had been true, to sustain a verdict in favor of such party. And there was also enough evidence introduced by each party, if it had been true, to have defeated the other party. But as the jury found upon all the doubtful questions in favor of Hobbs, and against the plaintiffs, and as their findings have been sustained by the court below who saw the witnesses and heard them testify, this court which sees the evidence only on paper, cannot, upon the well-settled rules of this court, set aside such findings. Take all the evidence of the defendant, and all the evidence of the plaintiffs not inconsistent with the defendant's evidence, and exclude the balance, and then the evidence would be amply sufficient to sustain the verdict and findings of the jury.

II. We shall consider the first and third rulings together. Do the special findings, and the general verdict, taken together, sustain the judgment? If the special findings are in any respect inconsistent with the general verdict, they will of course control the general verdict, and the judgment should be rendered accordingly. (Gen. Stat. 684, § 287.) But we do not think there is any such inconsistency in this case. We think the special findings in this case are entirely consistent with the general verdict. The special findings are in substance as follows: Prior to September 8th 1874, Pope was selling goods at Cawker City, Kansas, and Hobbs had some goods in Nebraska. On the 8th or 9th of said September, they had a talk about forming a copartnership, but did not enter into any agreement with reference thereto. Soon after that time Hobbs went to Nebraska, and while gone Pope bought the goods for which the plaintiffs brought this action. He bought them in the name of "Pope & Hobbs," and the

plaintiffs shipped them to him in the same name. On the 19th of October following, Hobbs returned from Nebraska, and on the next day he and Pope entered into a copartnership for the purpose of dealing in merchandise under the name of "Pope & Hobbs." Pope, who had previously received said goods from the plaintiffs, invoiced them along with his other goods, and put them into the copartnership as a part of his (Pope's) share of the capital. Hobbs did not know at that time that any of said goods were purchased from the plaintiffs, or from whom they were purchased, or in what manner they were purchased; and he did not know that any goods had been bought or shipped by, for, or to Pope in the name of Pope & Hobbs. On October 29th, a bill for a part of said goods purchased by Pope from the plaintiffs was entered by Pope on the books of the firm of Pope & Hobbs; and between the 4th of February and the 9th of April 1875, a bill for the remainder of said goods was entered by Pope on the books of the firm of Pope & Hobbs. On February 4th, March 3d, April 30th, June 29th, and July 5th, 1875, payments were made by Pope to the plaintiffs out of the partnership funds, amounting in the aggregate to $301, and Pope at the time entered these payments on the partnership books. Hobbs had access to said books, but he did not know anything concerning said entries, or said bills, or said payments, until after April or May 1875. Hobbs never consented that either himself, or the firm of Pope & Hobbs, should become responsible for said goods, and never acquiesced in or ratified what Pope had done with reference thereto. Hobbs did not inform the plaintiffs that he would not be responsible for said goods until October 1st 1875, but the plaintiffs lost nothing on account of the delay. It was shown by the evidence that Hobbs was a farmer by occupation; that he "knew nothing about keeping books, or the mercantile business," that "he intrusted everything to Pope," and that the partnership was dissolved on the 20th of July 1875. This suit was commenced October 13th 1875.

Now there is nothing in the foregoing facts, contained in the

special findings of the jury, which would override or over-throw the general verdict of the jury. Hobbs was not liable for said goods at the time they were purchased, or shipped, and he never did anything afterward to make himself liable. It is true, the goods were put into the partnership business; but Hobbs did not at the time know anything concerning the previous transactions between Pope and the plaintiffs, and he accounted to Pope for the whole of the goods as the individual property of Pope. Hobbs never had any transactions himself with the plaintiffs, and never did anything by way of ratification, or affirmance, or approval of Pope's transactions with them. He never in any manner recognized Pope's debt to the plaintiffs as his debt, or as a debt of the firm of Pope & Hobbs. And the plaintiffs lost nothing by any failure on the part of Hobbs to sooner notify them that the acts of Pope were unauthorized. But why should Hobbs have notified the plaintiffs at all? An incoming partner is not bound to notify the creditors of the other members of the firm that he will not be responsible for their debts and obligations previously contracted; but he may simply remain silent, and refuse to pay or discharge them. It is not necessary that an incoming partner should *do something,* in order to *escape* liability for the previous debts and obligations of his copartners, but on the contrary it is necessary that he should *do something* in order *to make himself liable* for such debts or obligations. It is in fact necessary that the incoming partner should do something from which it may be inferred that he intends to assume, or that the new partnership shall assume, the previous debts and obligations of his copartners. The principal wrong committed by Hobbs in this case was to engage in a business of which he was wholly ignorant, and wholly incompetent to manage.

The judgment of the court below will be affirmed.

All the Justices concurring.