No. 31,592

FRED CHASTAIN, *Appellant,* v. F. E. BAXTER et al. (Forty Others, Members of Pi Kappa Alpha Fraternity), *Appellees.*

(31 P. 2d 21.)

Opinion filed April 7, 1934.

*George D. Rathbun* and *Ira C. Snyder,* both of Manhattan, for the appellant.

*R. P. Evans* and *George Clammer,* both of Manhattan, for the appellees.

The opinion of the court was delivered by

HUTCHISON, J.: This is an action upon a note and book account for groceries purchased by a group of young men associated together and known as members of the Pi Kappa Alpha Fraternity at the Kansas State College of Agriculture and Applied Science, at Manhattan, Kan. Forty-six members of the fraternity were made

defendants as partners, operating under the name of the Pi Kappa Alpha Fraternity, and the funds of the fraternity were garnisheed in a bank in Manhattan.

The answer was a general denial and a special denial as to any partnership existing in the fraternity or in its relations to the plaintiff. The case was tried to the court without a jury. The correctness of the items of account was admitted in the progress of the trial, including the items for which the note was given. The trial court, in a written memorandum opinion, found in effect that the fraternity was a voluntary society or association rather than an ordinary partnership, and that only five of the defendants were members and living at the fraternity house when the groceries were purchased and consumed, and rendered judgment for the full amount of the claim, including the note, against those five members, and discharged the garnishment of the fraternity funds.

The plaintiff accepts the judgment against the five defendants and appeals as to the other defendants and as to the discharge of the garnishment, assigning many errors, particularly as to the refusal of the trial court to render judgment against two other defendants who were members of the fraternity at the time the purchases were made, and nine others who are claimed to have ratified the purchases later.

It is not necessary to decide in this case whether or not a partnership relation in all its details actually existed between the members of this fraternity because some of the same relations, obligations and duties exist in voluntary societies and associations.

The trial court found the following, as stated in the memorandum opinion:

"From the evidence, the Pi Kappa Alpha Fraternity is organized and operated much the same as are all other college fraternities and local chapters of lodges, patriotic societies, etc. Pi Kappa Alpha is a national fraternity operating with local chapters at different colleges over the United States, of which one is the group at Manhattan now in question. The local chapter is an unincorporated group bound by certain by-laws and rules of the national organization and by certain laws and rules of its own. Membership in the association is achieved in the way common to college fraternities; that is, persons considered eligible are pledged and, after a certain probationary period they are, if still approved, admitted to active membershp. While they are pledges they have no voice in the management, operation, or control of the business of the fraternity."

The evidence shows that the note given by the treasurer of the

fraternity, in the name of the fraternity, was dated June 7, 1929, for unpaid balance on groceries purchased from the plaintiff during the semester then just ending; that the items of the account were for unpaid balances of purchases of groceries made by the general manager of the fraternity during the months of January, February, March, April, May and September, 1930; that payments were made on the account almost monthly after September, 1930, until April, 1931, and reports were regularly made by the general manager of the local members at their monthly business meetings, and that many of the forty-six defendants were pledges on probation and, as the court found, not entitled to attend any of the business meetings and without any voice in or control of the business of the fraternity.

This action was commenced May 9, 1932.

The fraternity house was owned by the national or alumni branch of the fraternity and was rented to the local fraternity. Each member living in the house paid the general manager $30 per month for his board and $10 for his room. The deposit in the bank that was garnisheed was derived almost exclusively from these two items.

The two members of whom complaint is made that they were not included with the five found liable, became members of this fraternity prior to the making of any of the purchases here involved, but were not in the fraternity house nor attending that school during any of the time these purchases were made or these groceries consumed, but returned to the school later and were there as active local members when this action was commenced. The nine others who were excluded by the trial court were not there when the goods were purchased or consumed, but became active members and were there when the general manager made his monthly reports of payments made on the old account, and plaintiff urges this situation and knowledge on their part was a ratification of the indebtedness.

In the case of *Thompson v. Garrison,* 22 Kan. 765, four persons, members of an unincorporated Presbyterian church, invited a minister, by letter signed by them, to become pastor of their church, agreeing to pay him a certain salary, and he, after rendering such service, sued these four parties for the unpaid balance of his salary, and it was held:

"Where parties, in behalf of a voluntary and unincorporated association of which they are members, invite a third party to perform services, and in pursuance thereof such services are performed, the parties inviting are responsible, either as signing the invitation or as members of the association." (Syl.)

The case of *Korstad v. Williams*, 80 Wash. 452, was where the individual members of a local fraternity were sued for rent of a house leased to them, and it was held:

"The fact that the local members of a fraternity entered into a lease executed by the president and secretary in the name of the association, does not preclude the landlord, in suing for rent, from alleging that the members were a voluntary association and contracted as copartners. . . ." (Syl.)

Any attempted specific definition of a partnership and the test for a determination as to whether a particular organization is a partnership or a society or association, is of very little help in determining the liability of members of an organization, because there are very similar obligations imposed in all of them, and the difficulty in naming an exact test is well stated in the first paragraph of the syllabus of *Wade v. Hornaday*, 92 Kan. 293, 140 Pac. 870:

"Partnership is a matter of contract and courts will not create such a contract against the will of a party. A definition of partnership which is at once accurate, comprehensive and exclusive is extremely difficult. Participation in the profits is only regarded as a circumstance to be considered in determining whether or not a partnership existed. The mere fact that the parties called themselves partners and referred to their business relation as a partnership will not necessarily make them partners nor their business a partnership." (Syl. ¶ 1.)

Note also the following holding in the earlier case of *Lee v. National Bank*, 45 Kan. 8, 25 Pac. 196:

"Where one member of a partnership of occupation and employment executes a note in the firm name to a bank, without the knowledge of the other member, and in direct violation of the articles of copartnership, the payment of such note cannot be enforced against the firm." (Syl. ¶ 2.)

But even if some of the defendants in this case should now be partners, they would not be liable to the plaintiff for debts· contracted prior to the time they became partners, as was held in *Rohlfing v. Carper*, 53 Kan. 251, 36 Pac. 336:

"An incoming partner of a trading firm is not liable for the prior debts of the firm without a special promise, founded on a sufficient consideration, but such consideration may be the interest in the property of the firm received by him at the time he becomes a member." (Syl.)

No such consideration is here suggested or shown, and no possible consideration could in this case exist by way of interest in property.

It was held, as far back as the case of *Gauss v. Hobbs*, 18 Kan. 500, that where, pending the formation of a partnership, one of the partners contracted a debt in the name of the partnership without

the knowledge or consent of the other partner, the latter was not bound thereby.

"It has been said that the word 'association' is a generic term which may properly comprehend a partnership as well as a corporation. Strictly speaking, however, an unincorporated association is neither a partnership nor, it has been said, a quasi partnership, although it is rated as a partnership so far as its capacity to sue and to be sued is concerned. In any event, the members thereof, whatever may be their relation and liability to third persons dealing with the association, are not partners *inter sese,* since the death of a member does not of necessity work a dissolution of the association, and there exists no authority in a single member to bind the others. This is especially true of associations which are not engaged in business enterprises and the objects of which do not contemplate profit and loss, but which are organized for moral, social, benevolent, literary, scientific, political, or other like purposes, or for the purpose of recreation or amusement. As to these it is generally held that they are not partnerships, and that the members are not partners, either as between the members themselves, or as between a member and the association, or as between members and third persons dealing with them or the association." (5 C. J. 1334.)

As to the liability of partners it is said in 47 C. J. 1028:

"In the absence of evidence of a contract, express or implied, by which he assumes the burden, one who becomes a member of an existing firm does not thereby render himself liable for its existing obligations."

As to the liability of members of a voluntary association or society, it is said in 5 C. J. 1345:

"Since an unincorporated association has, as such, no capacity to enter into contracts, unless authorized to do so by statute, it follows that in the absence of such a statute the association is not liable, as such, on contracts made in its name. However, officers of an association who make a contract in its name, and associate members who assent to the contract so made, are personally bound thereby. . . ."

It would seem that a liability exists, under the circumstances which were found by the trial court with reference to the organization of this local fraternity and the manner in which its members conducted the business affairs thereof, only against the members of the fraternity who gave assent to the incurring of such obligation, directly or indirectly, and those who thereafter definitely and specifically approved or ratified the same. Applying this principle to the facts above stated as to the two members of the fraternity who, although members of the local fraternity, became such before this obligation was incurred but were absent during all the time the purchases were made and the groceries consumed and had returned to the school and the fraternity house before this action was com-

menced, we think they could not be held liable for the obligations created and incurred in their absence. As to the nine other members of the fraternity, who were present and no doubt heard the monthly reports of the business manager showing partial payments being made by him out of the funds of the society on the old account of the plaintiff, being liable by reason of acquiescence or ratification, it would seem that something more than simply hearing such report would be necessary for such purpose. It was said in 6 R. C. L. 600:

". . . no legal liability can arise out of the mere silence of the party sought to be affected, unless he was subject to a duty of speech which was neglected, to the harm of the other party."

The two faculty members made defendants, one a representative of the alumni fraternity, the owner of the building, and the other the faculty advisor, were in no manner partners or otherwise liable.

The running of a boarding and rooming house by members of a local fraternity cannot well come under the usual terms or definitions of a joint adventure, as suggested by plaintiff, the distinction between such and a partnership under the facts in this case not being easily recognized. (See definitions and distinctions in 33 C. J. 841.)

There was no error in the discharge of the garnishment of the funds of the local fraternity in the bank because the fraternity was not a defendant in the action—only its members were made defendants—and the funds garnisheed belonged to the fraternity or all of its members, and there is now no claim urged that more than sixteen of the forty-six defendants are liable.

In the case of *Bank v. Schuetz*, 103 Kan. 229, 173 Pac. 278, it was said:

"Where, in an action against an individual partner, the funds of the firm are garnisheed, the plaintiff acquires by his garnishment an interest only to the extent of the share of the debtor, which is his interest in the balance which remains after the firm's debts and the equities of partners are satisfied. . . ." (Syl. ¶ 2.)

No evidence was introduced as to the liabilities of the fraternity, the net balance of the garnisheed funds which belonged to all its members, or the share of such funds which belonged to those members against whom judgment was rendered, and hence the garnishment of the general fund was properly discharged.

The judgment is affirmed.