No. 29,190.

George L. Clark et al., *Appellees,* v. J. M. Crouse, E. E. Boyle and B. B. Brown, a Copartnership, doing business as The O. K. C. Drilling Company, *Defendants;* E. E. Boyle, *Appellant.*

(285 Pac. 577.)

Opinion filed March 8, 1930.

*J. Graham Campbell* and *W. M. Glenn,* both of Wichita, for the appellant.

*Riley W. MacGregor,* of Medicine Lodge, *J. N. Tincher* and *Rubert G. Martin,* both of Hutchinson, for the appellees.

The opinion of the court was delivered by

Johnston, C. J.: George L. Clark and W. L. Clark, copartners, brought this action against J. M. Crouse, E. E. Boyle and B. B. Brown, as a partnership doing business under the firm name of the O. K. C. Drilling Company, to recover for labor performed for defendant towards the drilling of an oil well and for $100 alleged to have been advanced by them to the defendants. The plaintiffs in their petition set forth a detailed account of the services performed and of the money advanced by them in 1925, that the defendants had leased a tract of land and started to drill an oil well thereon and orally contracted with plaintiffs to do certain hauling for de-

fendants and agreed to pay them the customary wages or would assign to them certain described acreage around the well, and that if plaintiffs would accept the acreage in lieu of the customary price defendants would drill the well to a depth of 3,600 feet. They alleged that the work was done, but that defendants refused to assign the acreage and failed to drill the well to a depth of 3,600 feet. That in October, 1925, they had promised to pay plaintiff the customary price, but since that time had refused to make such payment. It was alleged that the three defendants represented and held themselves out as partners doing business as the O. K. C. Drilling Company. The only defendant that filed an answer in the case was E. E. Boyle, and he defended upon the ground that he was not a member of the partnership named and had not as a partner or as an individual contracted with plaintiff to do any work on the oil well, as alleged by plaintiffs. He further denied that he had as a partner or individually leased land or had agreed to pay for work in acreage or otherwise. He verified his answer, and the principal question tried was whether Boyle was a partner or had held himself out as a partner in the transaction. At the close of plaintiffs' testimony Boyle demurred to it, insisting that plaintiffs had wholly failed to establish that he was a partner in the drilling company or had in any way made himself liable for the claim of plaintiff. The demurrer was overruled, and no evidence being introduced by Boyle the court submitted the case to the jury, which returned a verdict for plaintiffs and against Boyle for $2,911.81, and judgment was rendered in accordance with the verdict. Boyle appeals.

As already indicated, a question of fact is presented, and that is, Did plaintiff produce evidence fairly tending to show that Boyle held himself out as a partner in the drilling company or that he was in fact a partner and therefore liable to plaintiff for the labor performed for the drilling company? The testimony was that the contract was made with plaintiff for services to be performed prior to February 24, 1925, and that work under the contract was begun on that date. On March 17 the well was spudded in, but plaintiffs had not yet seen Boyle at the well, nor had they any transaction with him. At one time Crouse borrowed $100 from plaintiffs to pay a driller, but it was not shown that Boyle took any part in the transaction. The plaintiff, George L. Clark, testified that his conversations and agreement respecting employment were with Brown and Crouse, and that he had no conversation with Boyle until about

the time the well was spudded in or when they were getting the pumps ready to work right after the spudding. He testified as follows as to the conversation with Boyle:

"Q. State, George, what he said to you. A. He told me to go to South Haven and get two joints of 20-inch pipe; gave me an order.

"Q. Did he give you an order as to what kind of casing he wanted? A. A written order.

"Q. Do you have that order now? A. No, it was given to the driller where we got the pipe.

"Q. Now then, after that conversation, did you ever have any conversation with Elmer Boyle? A. One time.

"Q. Give as near as you can the time. A. That was later on, about a week.

"Q. What was that conversation? A. He offered to pay me for hauling this pipe.

"Q. Well, just state what he said about that, and what you said to him about it. A. Well, he offered to pay me for the hauling, and I told him we would let it go and we would figure it up later.

"Q. Did you ever have any further conversation with him? A. No, not that I know of in particular.

"Q. Were you around the well, George, virtually all the time it was being drilled? A. Well, off and on.

"Q. Did you see Elmer Boyle there? A. Yes, sir.

"Q. On numerous occasions? A. Yes, sir.

"Q. I wish you would state what you observed Mr. Boyle doing there. A. Well, he was there and seemed to be kinda helping them out a little— looking after things a little."

The plaintiff, W. L. Clark, testified about the same as his brother respecting the going to South Haven to get two joints of pipe. He was asked if he saw Boyle about the well afterwards and he replied, "Well, I don't remember now." In his testimony he said that they had not been paid for the hauling except $1,500 paid by J. M. Crouse. He further said that no acreage was ever tendered to him, and that the well had not been drilled to a depth of 3,600 feet. Another witness, Mike Curran, testified that he saw Boyle at the well when the rig was being built, and that he was working around the rig. Reese Clark, the father of plaintiffs, testified that he had a conversation with Boyle when drilling was going on, and when he spoke of a pond from which they had been getting water, that it was going dry, the witness said he told Boyle that he had a well that would furnish all the water they wanted; that Boyle said they had to have water to pump; that they talked and joked together

about it, but that he did not know whether Boyle was connected with the rig or not. He had never asked him. Later, when the well became low, Boyle said to witness they had to have water to pump and further that "I am afraid of the water; we ain't going to have water here to drill this well." He says, "Get in the car and I will show you all the water you want." They went over to the south end of the place to a spring pond, and he told Boyle that water might be taken out of that, and afterwards Boyle said, "I can go home satisfied," he says, "we got the water."

It cannot well be contended that there is any direct evidence of a contract of partnership between Boyle and the other parties. There was no testimony by Crouse or Brown that Boyle was connected with them in the venture, nor was there any admission by Boyle that he was a member of the firm. There was nothing to show that he contributed anything towards the capital or had promised to furnish any, nor was there evidence of any sharing of the profits or expenses of the project. The existence of a partnership cannot be established by conjecture, or the statement of a witness that he understood a partnership existed between certain members, nor by other hearsay testimony. As between a member of a partnership and third parties, a partnership may be shown by circumstantial evidence warranting an inference of the existence of the relationship, but not where there is only a slight basis for the inference. (47 C. J. 727, § 136.) The general rule is that a person is not liable for a partnership obligation unless he is in fact a partner. If a party permits his name to be used as a partner or by his statements and conduct indicates to the public that he is a partner, he will be estopped to deny responsibility. If he holds himself out as a partner, he may be held liable as far as third parties are concerned, although he may not in fact be a partner. This rule is based on the ground of estoppel, but is not to be applied when the third party has no knowledge of the holding out and who was not misled by the appearance produced. (20 R. C. L. 1067.)

What was there in the testimony as to statements and conduct of Boyle which tended to show partnership? No admissions were made of such a relationship, nor was there any direct evidence concerning it. His appearance at the well at different times when he helped with the work is more consistent with the position of an employee than a principal or proprietor. Much reliance is placed

on the fact that he directed plaintiffs to go to South Haven for two lengths of pipe and had offered to pay for the trip on their return. That might have been done by a foreman or any employee in charge of the work, and is insufficient as a basis to warrant an inference of the existence of a partnership or to estop defendant from denying responsibility as a partner. The other circumstances relating to finding a supply of water do not come up to proof of the relation of a partner. The driller or other employee in charge of the work would be concerned about securing water for drilling and does not warrant the inference that he was a partner in fact, or that he was holding himself out as a member of the partnership.

It is true, as plaintiffs contend, that there is no dispute in the evidence, but the trouble with plaintiffs' case is the lack of competent evidence tending to show that a contract relation existed between Boyle and the other parties named, under which they combined their property, labor or skill in the oil-well enterprise as principals for joint profit. There is nothing approaching proof of a holding out as a partner which would give rise to a liability.

The conclusion reached renders it unnecessary to consider some other objections made by the defendant.

Judgment will be for the defendant. It is so ordered.