No. 35,256

MILLICENT GARNER, *Appellee*, v. PAUL MARTIN et al., *Appellants*.

(122 P. 2d 735)

Opinion filed March 7, 1942.

*J. B. Patterson,* of Wichita, argued the cause, and *A. W. Hershberger, Enos E. Hook, Patrick J. Warnick, R. E. Kirkpatrick* and *Richard Jones,* all of Wichita, were on the briefs for the appellants.

*Clarence R. Sowers,* of Wichita, argued the cause, and *Claude E. Sowers* and *Byron Brainerd,* both of Wichita, were on the briefs for the appellee.

The opinion of the court was delivered by

ALLEN, J.: This was an action for personal injuries. Judgment was recovered against the defendants Martin and Madison. The appeal is by the defendant Martin.

On the date of the injury the defendant Madison owned and operated a storage garage in the city of Wichita. The plaintiff was a customer of this garage and on the date of the accident her car was in the garage for a wash job. At the time she was injured she was waiting at the side of the front door of the garage for her car to be delivered to her.

The defendant Martin was also a customer of the garage. He had been storing his car at this garage prior to the time Madison acquired the business and continued to store his car there after Madison took possession.

It was a part of the storage service to deliver the patrons' cars to the respective owners at the front door of the garage. On the day of the accident the plaintiff came to the garage at the appointed time to get her car. She followed Madison back into the garage, but Madison asked her to go back and stand by the front door and the car would be delivered to her.

Madison had in his employ one Mitchell, a garage attendant, whose duty, among other things, was to drive cars from their parked position in the garage to the front door for waiting patrons.

While plaintiff was standing by the front door of the garage awaiting her car, the defendant Martin appeared and told the garage attendant Mitchell to bring out his car. Plaintiff testified that defendant Martin used the following language: "I want my car and I am in a hurry, step on it." As Mitchell was driving the car of defendant Martin through the front door of the garage the door of

the car came open and swinging out struck the plaintiff. Plaintiff testified Mitchell drove the car through the door "at a terrific speed with the car door swinging open." A witness for plaintiff, who saw the accident, stated:

"The car was traveling probably 10 or 12 miles an hour as it came through the door. It might have been making 15. It was in low gear. Mitchell was not driving the car any faster than usual."

The impact of the swinging door of the car inflicted serious injuries to plaintiff, for which the action was brought.

Various errors are assigned. We have outlined above the evidence on the part of the plaintiff and will consider the contention that the court erred in overruling defendants' demurrer to plaintiff's evidence.

In testing the sufficiency of the evidence as against a demurrer, we are to consider all of the plaintiff's evidence as true; we are to consider that favorable to the plaintiff and disregard that which is unfavorable; we are to consider all inferences as favorable to the plaintiff, and not weigh any part that is contradictory. (*Robinson v. Short*, 148 Kan. 134, 79 P. 2d 903.)

The theory upon which the action of plaintiff against Martin is predicated is thus stated by counsel in the brief on behalf of plaintiff:

"The very basis of our action is that Martin had no right to exercise any control over Mitchell except to tell him he wanted his automobile. But Martin did more than this, having a right to tell Mitchell to get his automobile, Martin committed such a tort in exceeding his authority over Mitchell by telling Mitchell he was in a hurry and to step on it, in directing the manner in which Mitchell should deliver his car, and by doing that Mitchell became the servant and agent of Martin in the manner in which Mitchell drove the automobile in obeyance of Martin's orders, and the injuries to the plaintiff were sustained while Mitchell was so acting pursuant to Martin's said orders."

A master is a principal who employs another to perform service in his affairs and who controls or has the right to control the physical conduct of the other in the performance of the service. A servant is a person employed by a master to perform service in his affairs whose physical conduct in the performance of the service is controlled or is subject to the right to control by the master. (*Hurla v. Capper Publications, Inc.*, 149 Kan. 369, 87 P. 2d 552.)

That a servant may be loaned or hired by his master to another for some special purpose and he becomes the servant of such other person in performing such service is well settled in this state. (See

*Moseman v. Penwell Undertaking Co.*, 151 Kan. 610, 100 P. 2d 669, and cases there cited.)

The general rule as formulated in Restatement of the Law of Agency, § 227, reads:

"A servant directed or permitted by his master to perform services for another may become the servant of such other in performing the services. He may become the other's servant as to some acts and not as to others."

*Comment b* under § 227 reads:

"In the absence of evidence to the contrary, there is an inference that the actor remains in his general employment so long as, by the service rendered another, he is performing the business entrusted to him by the general employer. There is no inference that because the general employer has permitted a division of control, he has surrendered it."

The following illustrations are under the same section:

"1. P, a taxicab company, rents a cab and driver to B for a day, upon the understanding that the driver is to take B anywhere that B wishes to go and is to obey all reasonable commands of B. In the absence of evidence that B is to control the details as to the management of the cab, A is P's servant while driving the car."

"2. P, a master plumber, sends one of his journeymen to make such repairs upon B's premises as B shall point out, B to pay P at the rate of one dollar per hour for the journeyman's time. In making repairs upon the plumbing, the journeyman is acting as P's servant."

"4. During the loading of P's ship by B, a stevedore, the steam winch upon the ship operated by A, a member of the crew, is used to hoist goods from the dock to the hold. For this service B is to pay P. The servants of B direct A when to start and when to stop the winch. The inference is that in the management of the winch A acts as P's servant."

In *Driscoll v. Towle*, 181 Mass. 416, 63 N. E. 922, the action was for personal injuries caused by the plaintiff being struck in the street by a horse or wagon driven by one Keenan. The facts were stated by the court:

"The defendant 'was engaged in general teaming business in Boston.' He owned the horse and wagon, and employed Keenan and paid him his wages. Keenan's only contract of employment was with him. For some time, however, Keenan had been carrying property for the Boston Electric Light Company, under some arrangement between the latter and the defendant. The general course of business, or at least that adopted on the day of the accident, was this. Early in the morning Keenan took the horse and wagon from the defendant's stables and reported to the electric light company. An employee of that company would give him his orders as to what to do and where to go, and he spent the day in carrying these orders out. Sometimes he would help pull up arms on the poles, or pull up machinery, and the like. In driving, if he was directed to drive fast, he would drive fast, and if told that he had time

enough, he would take his time, but he chose his own route and had exclusive management of his horse. At night he returned to the defendant's stables. He harnessed and unharnessed the horse, and fed it at noon. At the moment of the accident he was going to get some arms in pursuance of an order from the foreman of the electric light company." (p. 417.)

In the opinion of the court, delivered by Holmes, C. J., it was stated:

"But the mere fact that a servant is sent to do work pointed out to him by a person who has made a bargain with his master does not make him that person's servant. More than that is necessary to take him out of the relation established by the only contract which he has made and to make him a voluntary subject of a new sovereign—as the master sometimes was called in the old books.

"In this case the contract between the defendant and the electric light company was not stated in terms, but it fairly could have been found to have been an ordinary contract by the defendant to do his regular business by his servants in the common way. In all probability it was nothing more. Of course in such cases the party who employs the contractor indicates the work to be done and in that sense controls the servant, as he would control the contractor if he were present. But the person who receives such orders is not subject to the general orders of the party who gives them. He does his own business in his own way, and the orders which he receives simply point out to him the work which he or his master has undertaken to do. There is not that degree of intimacy and generality in the subjection of one to the other which is necessary in order to identify the two and to make the employer liable under the fiction that the act of the employed is his act.

.    .    .    .    .    .    .    .    .    .    .    .    .    .

"In cases like the present, there is a general consensus of authority that, although a driver may be ordered by those who have dealt with his master to go to this place or that, to take this or that burden, to hurry or to take his time, nevertheless in respect to the manner of his driving and the control of his horse he remains subject to no orders, but those of the man who pays him. Therefore he can make no one else liable if he negligently runs a person down in the street." (pp. 418, 419.)

See, also, *Charles v. Barrett*, 233 N. Y. 127, 135 N. E. 199; *Standard Oil Co. v. Anderson*, 212 U. S. 215, 29 Sup. Ct. 252, 53 L. Ed. 480.

The evidence on the part of the plaintiff disclosed that Mitchell was employed by Madison, the owner of the garage, and that it was the duty of Mitchell to drive cars from their parked positions to the front door for waiting patrons. In driving the car of the defendant Martin to the front door of the garage, Mitchell was carrying out the orders of Madison. In order to fasten liability on Martin, it must appear that the legal relation of master and servant existing between Madison and Mitchell had been suspended for the time and

that a new like relationship between Martin and Mitchell had been created. It was the duty of Mitchell to deliver the car of Martin at the front door and there is no evidence that in performing such service he was not acting under the orders of and in allegiance to his employer Madison. The fact that Martin in requesting his car stated that he "was in a hurry—step on it," did not translate Mitchell into a servant of Martin. See *Driscoll v. Towle,* supra. We do not think Mitchell was in the service of Martin at the time of the accident.

We have carefully examined the testimony submitted on the part of the defendant and find no evidence that would cure the defects in plaintiff's evidence above shown. It follows that the court erred in overruling defendant's demurrer to plaintiff's evidence. The judgment is reversed and the cause remanded with instructions to enter judgment in favor of defendant.

HOCH, J., not participating.