No. 38,565

TOM GRANNELL, *Appellee,* v. EARL F. WAKEFIELD, *Appellant.*

(242 P. 2d 1075)

Opinion filed April 12, 1952.

J. B. McKay, of El Dorado, and D. Arthur Walker, of Arkansas City, argued the cause, and W. L. Cunningham, Wm. E. Cunningham, and William R. Howard, all of Arkansas City, and James B. McKay, Jr., of El Dorado, were with them on the briefs for the appellant.

Harry O. Janicke, of Winfield, argued the cause, and J. A. Herlocker, of Winfield, was with him on the briefs for the appellee.

The opinion of the court was delivered by

WEDELL, J.: Plaintiff instituted suit for an accounting involving an alleged partnership or joint adventure in oil and gas drilling operations and for judgment on the amount found to be owing. The judgment decreed plaintiff, Tom Grannell, was entitled to an accounting. From that judgment the defendant, Earl F. Wakefield, has appealed.

The amount found due to appellee, if any, has not been determined. The trial court retained jurisdiction for that purpose.

Although appellant assigns various errors his fundamental complaints are (1) appellee's evidence failed to establish the agreement alleged in this amended petition; (2) his evidence established neither a partnership nor a joint adventure but a contract of employment; and (3) such contract made in May, 1944, during the war, provided for increased compensation to appellee of ten percent of the net profits of the enterprise; it violated the 1942 Stabilization Act (50 U. S. C. A. § 961, et seq.) and the rules and regulations issued pursuant thereto; it had not been approved by the federal authorities and was void.

In a previous appeal this court held the amended petition stated a cause of action for an accounting. (Grannell v. Wakefield, 169 Kan. 183, 217 P. 2d 1059.) Appellant's third above contention was not advanced on the first appeal. However, as we understand it, that contention applies only to wages under a contract of employment and not to a partnership or joint adventure. We must, therefore, first determine appellant's contentions (1) and (2).

This being an equitable action the trial court called a jury in an advisory capacity. It submitted only one jury question. It was:

"Did the parties, plaintiff and defendant, enter into an oral contract substantially as claimed and as set forth in Number 3 of the instructions?"

That instruction was:

"The plaintiff in his amended petition and amendment thereto claims that on or about the first day of May, 1944, the defendant, realizing the possibility for profits in a widespread drilling operation, and the benefit to his own production business by having drilling outfits available under competent management, entered into, at that time, an oral contract and agreement with the plaintiff, wherein, under the terms of such agreement, it was provided that the plaintiff and defendant should for such length of time as was mutually agreeable to them conduct drilling operations, both for the defendant and for others; that it was specifically agreed that the defendant should advance all necessary funds needed for the purchase of equipment and for the operations to be conducted; that defendant should keep all books of account and should duly account to the plaintiff for all earnings.

"Plaintiff alleges that it was further agreed that from the proceeds realized and earned from the drilling operations that were to be conducted by the parties the plaintiff was to receive as a working salary the sum of $12 a day, plus $1 per day for automobile upkeep, and also his necessary and reasonable away from home expenses; that one-half of the office expense of the defendant pertaining to his oil and gas operations should be charged against the joint enterprise of the parties, as expenses; and that the defendant should draw the sum of $150 per month for his service rendered in accordance with said agreement, all of such sums should be charged against the profits realized and earned from the drilling operations conducted by the parties.

"Plaintiff alleges that the earnings from the drilling operations would include the usual and normal contract and current price for such drilling conducted individually by the defendant, as well as the earnings made upon drilling contracts with other persons; that all of the expense of operations, including the working salary of the plaintiff and the defendant, as hereinbefore stated, were to be charged against operations, and from the net profits, subject to deductions, plaintiff was to receive ten percent of the net earnings and the defendant to receive 90 percent thereof; that the plaintiff was to act as general manager and superintendent of all of said drilling operations for and on behalf of the parties, and to charge such equipment and supplies as were necessarily required to the defendant; that the plaintiff was at all times referred to herein competent and skilled in the management of and the handling of rotary drilling operations; and that he fully conformed with and fulfilled the letter and spirit of said agreement."

On the single question submitted, the court, in substance, instructed the jury in harmony with our former opinion that it was unnecessary the agreement should have been reduced to formal terms but might be found from the circumstances and the mutual acts and conduct of the parties; it was, however, necessary the agreement be established substantially as alleged and that the burden of so establishing it and its performance, by a preponderance of the evidence, rested on appellee. The jury answered the single question submitted to it in the affirmative.

Appellant moved to set aside the verdict of the jury on the ground it was contrary to the law and the evidence. He also moved for judgment in his favor notwithstanding the verdict for the reason the pleadings and the uncontradicted evidence required such a judgment. He also filed a motion for a new trial. The trial court thereafter made and filed its own findings of fact and conclusion of law as follows:

"1. This is an equity case. A jury could not be demanded as a matter of right.

"2. The court called and empanelled a jury in an advisory capacity and submitted a special interrogatory to be answered by the jury. This interrogatory was whether or not the contract between plaintiff and defendant, as alleged in plaintiff's petition, amended petition and amendment thereto was made as claimed. The jury answered this interrogatory in the affirmative, and the court is of the opinion that the answer made by the jury is sustained by a preponderance of the evidence.

"3. In such case the court is not bound to accept the verdict of an advisory jury but•may approve and adopt it as a finding of fact by the court. The court does here and now approve and adopt the finding of the jury as a finding of the court, and, in addition thereto, finds that the contract between plaintiff and the defendant was orally made on the . . . day of May, 1944, and was to be in force and effect from that date, but on account of the fact that the defendant's bookkeeping and accounting records were made and kept on an annual basis, it was further orally agreed between the parties that whatever earnings that might accrue for the remainder of the year, that is, the calendar year of 1944, would be carried over into the accounting for the year 1945; and at the beginning of the calendar year of 1945 the defendant's bookkeeping and accounting method was changed to conform to the contract and agreement between the parties, and the plaintiff was treated by the defendant as a partner or joint adventurer and not as an employee of the defendant.

"4. The court further finds that it was the intention and purpose of the agreement between the parties to form a partnership specifically limited to the operations and profits from rotary drilling operations, and in fact was a joint venture between the plaintiff and the defendant.

"5. All of the material facts are found in favor of the plaintiff and against the defendant.

"6. The court further finds that a copy of the individual income tax return of the defendant for the calendar year of 1945, identified in the record as plaintiff's Exhibit 8, was admitted in evidence over the objection of the defendant, but was not presented or read or commented upon, either to the court or to the jury. Therefore, the court excludes said Plaintiff's Exhibit 8 from consideration in these findings and conclusions.

"7. In the course of the trial the defendant offered in evidence three Exhibits, numbered DX 16, DX 17, and DX 20. These exhibits are made up of correspondence between the defendant and the Bureau of Internal Revenue,

Salary Stabilization Unit, consisting of a letter from the defendant to this department, dated January 4, 1945; a reply from the Bureau of Salary Stabilization on March 27, 1945; and record for the Bureau of Salary Stabilization Unit, date of May 7, 1945. These Exhibits are all correspondence made between the defendant and said department of the Government subsequent to January 1, 1945, after the parties had been operating the business as a joint venture since May, 1944. The plaintiff had no part in this correspondence, and the evidence does not disclose that he was consulted about the correspondence, that he saw the letters or was present when any of them were written. The defendant in his testimony stated that at some subsequent date he told the plaintiff about the result of the correspondence. This the plaintiff denies.

"8. While these Exhibits were admitted in evidence, the court does not rely upon them as negativing the contract made by the parties in May, 1944, and althought they were presented and were argued to the jury, the jury found that the contract claimed by the plaintiff in his pleadings was actually made and performed.

### "CONCLUSION OF LAW

"The conclusion of law is that the plaintiff have judgment against the defendant establishing the contract between the parties as claimed by the plaintiff, as a partnership, limited in its scope to the operations and the results of the operations from the rotary drilling tools and equipment, which agreement, the surrounding circumstances and conduct of the parties establishes a contract of joint adventure, and that the plaintiff is entitled to an accounting in accordance with such contract and findings herein, such accounting to be taken according to the usual, ordinary and accepted rules and practices of certified public accountants.

"The court reserves jurisdiction of this case for the purposes of accounting and a final judgment of recovery, if any."

Appellant moved to set aside the court's findings and conclusions as being contrary to the law and the evidence. He also again moved for judgment in his favor notwithstanding the court's findings and conclusions for the reason such judgment was required by the pleadings and the uncontradicted evidence. Appellant filed a second motion for a new trial which covered all his previous motions and certain alleged trial errors. Appellant's various motions were overruled and judgment was rendered in accordance with the court's findings and conclusion.

Appellant asserts the court erred in its instructions to the jury and in its refusal to give certain instructions he requested. We find no prejudicial error in either of these particulars. Moreover the jury served only in an advisory capacity. The court later expressly approved the single finding of the jury, adopted the finding as its own, and made further findings on all other material issues. Failure to give the requested instructions to the jury, therefore, did not constitute prejudicial error. (*Minch v. Winters*, 122 Kan., 533,

542, 253 Pac. 578.) A trial court cannot shift its own peculiar responsibility in a case of equitable character. (*Bell v. Skinner*, 119 Kan. 286, 290, 239 Pac. 965.) Nor did it do so.

It was not necessary the advisory jury should be instructed on issues of the case not submitted to it for determination and which would not have aided the jury in deciding the particular question submitted to it. (*Stickel v. Bender*, 37 Kan. 457, 15 Pac. 580.) A court, in its discretion, may submit only certain questions to an advisory jury and error in that respect lies only in the abuse of discretion. (*Wood v. Turbush*, 63 Kan. 779, 780, 66 Pac. 991; anno. 156 A. L. R. 1147, 1150.) The record fails to reflect such abuse. Where a court is obliged to discover the truth of disputed facts and to reach its own ultimate decision thereon the findings of an advisory jury are not of controlling significance. (*Minch v. Winters*, supra, p. 542.)

We are, therefore, concerned only with findings made and the conclusion reached by the trial court and with appellant's contentions (1) and (2) previously stated. Only if those two contentions are sound can we reach the third. These contentions were made by appellant on his demurrer to appellee's evidence and during all subsequent proceedings heretofore mentioned.

We need not unduly labor the first contention. In our former opinion, *Grannell v. Wakefield*, supra, we said:

"In an action against an alleged partner for money and for an accounting, it is held the petition stated a cause of action for an accounting and a demurrer to the petition was properly overruled." (Syl.)

The petition referred to in the above syllabus was the petition as finally amended and on which the case was tried. Although on the trial the parties disagreed somewhat as to the precise terms of their agreement it cannot be said appellee's evidence failed to establish the terms thereof substantially as he had pleaded them. This conclusion actually also disposes of appellant's second contention as appellee had pleaded a joint adventure.

Able and experienced counsel for appellant recognize the well established rule that on review this court is not concerned with evidence contrary to the findings of the trial court but only with evidence which sustains or tends to support them.

The trial court expressly found: The contract was made as alleged by appellee; it was the intention and purpose of the parties to form a partnership specifically limited to the operations and profits from rotary drilling operations and in fact was a joint adventure

between them (finding 4); appellant's bookkeeping and accounting method was changed to conform to the agreement of the parties and appellee was treated thereafter by appellant as a partner or joint adventurer and not as an employee. (Finding 3.)

We need not narrate the various acts and over-all conduct of appellant which support the findings. The change in appellant's bookkeeping methods is only one of them. The statements and directions to his bookkeeper, to appellee, the books themselves, "advances" to appellee other than his working salary, directions to appellee to include $8,000 as profits in his 1945 income tax return, which he did but never received from appellant, and other facts which need not be mentioned are clearly indicative of the intended change in relationship to one of joint adventure. The proof, therefore, supported the allegations of the amended petition and, under our former decision, appellee was entitled to an accounting.

Although counsel for appellant tactfully refrain from directly challenging our former opinion they do so by indirection. They emphasize appellee's testimony that the sharing of possible losses was never mentioned in the agreement; he was to receive his working salary and expenses irrespective of losses; that appellee admitted he owned no interest in the drilling equipment or drilling contracts; that appellant took the drilling contracts in his own name and appellee had no control over that part of the enterprise; he only counseled with appellant concerning them.

In the former opinion we said absence of agreement to share losses is not necessarily fatal to the right of an accounting, citing *Shoemake v. Davis*, 146 Kan. 909, 73 P. 2d 1043; *Davidson v. Shaffer*, 153 Kan. 661, 113 P. 2d 90, and that a joint ownership of property was not essential but only one of the circumstances to be considered with others. In the Shoemake case, *supra*, we said:

"Sharing of losses? Yes, one will lose his money and the other his work if the project is a failure. Sharing of profits? Yes, if the venture is successful and there are profits to be shared. There is nothing in the decided cases nor in the textbooks which says that the sharing of profits and losses in a partnership or joint adventure must be the same in kind. Fairly considered, we think the agreement between plaintiff and defendant implied such a sharing of profits and losses, and was essentially a joint adventure." (p. 912.)

Appellant leans heavily on *Yeager v. Graham*, 150 Kan. 411, 94 P. 2d 317. It is true we there held:

"A partnership may be formed to explore for oil and gas lands leased by any or all of the individual members, but they must be associated together in the ownership or possession in some manner; and, although an equitable interest

is sufficient, there must be an interest in the property or a right to possession in the partnership, as distinguished from that of the owner. A mere license or contract of employment is not a sufficient interest to support a mining partnership.

"Each case of joint adventure or mining partnership is to be determined by its own facts, but ordinarily there must be concurrence of a joint interest in the property sought to be held as part of the venture, an agreement, express or implied, to share in the profits and losses, and actions and conduct showing co-operation." (Syl. ¶ 2, 3.)

The nature of the instant joint enterprise was not to acquire and hold leases jointly. It was of a different character, namely, to conduct drilling operations in a joint manner. Appellant was to furnish the drilling rigs, tools and equipment. Appellee had possession thereof and supervision and control of all workmen and drilling operations in order to produce the mutually desired results. A somewhat similar arrangement for the growth of grain, feed and livestock has been held to be essentially that of partners or joint adventurers. See *State Bank v. Girardy*, 117 Kan. 585, 232 Pac. 1076, and quotations therefrom and comments thereon in the Shoemake case, *supra*.

We also observe in the instant case an automobile purchased and used in the operations by appellee was charged on the books to appellee under the item, "suspense account." We also find appellant purchased three trailer houses, two to be used by employees and the other by appellee. The cost of two of them was taken out of the pay checks of the two employees periodically. The cost of the third used by appellee was not taken out of his regular working check but was charged against his account. After appellee withdrew from the enterprise appellant sold the trailer formerly used by appellee. Appellant stated the proceeds would be credited to appellee's account. Under all the circumstances we think we would not be justified in saying appellee had no equitable interest in the joint adventure.

Appellant argues the mere designation of a relationship by the parties as a partnership or joint adventure does not determine its true legal character. That is true. (*Wade v. Hornaday*, 92 Kan. 293, 296, 140 Pac. 870.) Here, as already indicated, the conduct of the parties is far more significant than the name they used to reflect the nature of their relationship.

Appellant insists mere measurement of an agent's or employee's compensation by a percentage of profits of an enterprise is not conclusive evidence of a partnership. Undoubtedly that is true.

(*Shepard v. Pratt,* 16 Kan. 209; *Wade v. Hornaday,* supra; *Aetna Ins. Co. v. Murray,* 66 F. 2d 289.) The sharing of profits by an agent or employee may constitute partial or complete compensation for services under a contract of employment. (*Moore v. Thompson,* 105 Kan. 492, 493, 184 Pac. 980; *Shoemake v. Davis,* supra, p. 912.) The true relationship must be determined from the conduct of the parties and the over-all facts and circumstances. (*Grannell v. Wakefield,* supra.)

Appellant further asserts an essential element of a partnership or joint adventure is the power of joint control. That is one of the tests which has been applied. (*Sutton v. Railway Co.,* 104 Kan. 282, 284, 178 Pac. 418; *Shoemake v. Davis,* supra, p. 915.) In view of the particular nature of the instant enterprise and the previously narrated facts it is not accurate to say there was no joint power of operation or control of the drilling venture.

A single definition of a partnership which is accurate, comprehensive and exclusive for all purposes is extremely difficult. (*Wade v. Hornaday,* supra.) A joint adventure was unknown at the common law, being regarded as within the principles governing partnerships. (*Lumber Co. v. Marshall,* 109 Kan. 172, 174, 197 Pac. 861.) Although it may be said a joint adventure is not identical with a partnership it is regarded as being of a similar nature and is governed by the same rules of law. (*Lumber Co. v. Marshall,* supra.) This is especially true concerning the relationship of the parties *inter se.* While a partnership is ordinarily formed for the transaction of a general business of a particular kind, a joint adventure, as a rule, relates to a single or particular transaction, although it may be conducted for a period of years. (*Livingston v. Lewis,* 109 Kan. 298, 302, 198 Pac. 952; *Shoemake v. Davis,* supra, p. 912.)

Having concluded the record supports the trial court's findings and conclusion the parties were engaged in a joint adventure we need not discuss appellant's third contention. In passing we may say, however, the application made by appellant without appellee's knowledge to the Salary Stabilization Unit of the Bureau of Internal Revenue, which it denied, was based on appellant's representations that he was attempting to increase the wages of appellee as one of his employees. The application was utterly silent with respect to the various facts upon which the trial court concluded appellee was a joint adventurer rather than a mere employee of appellant. Under the circumstances the action of the Salary Stabilization Unit does

not constitute a defense to the instant action by appellee for an accounting.

Appellant argues it did not have a fair and impartial trial. We have examined the various trial errors urged under this heading. Errors, if any, committed in connection with the jury trial of the single issue submitted to it cannot justify a reversal of the instant judgment. The trial court subsequently made its own independent finding on that single issue as well as on all others and its judgment was based upon its own findings.

As stated this action was finally tried by the court. Where a record, as here, fails to affirmatively disclose appellant's substantial rights were prejudicially affected by such rulings, the judgment will not be reversed. (G. S. 1949, 60-3317.) The same is true concerning other assignments of error which have been examined and considered. If there was error in any of the rulings the record presented fails to disclose the error was of sufficient magnitude to warrant a reversal of the judgment.

The judgment is affirmed.