No. 39,826

JAMES EVANS, *Appellee,* v. BOARD OF EDUCATION OF HAYS, KANSAS, and TRAVELERS INSURANCE COMPANY, *Appellants.*

WANDO EVANS, *Appellee,* v. BOARD OF EDUCATION OF HAYS, KANSAS, and TRAVELERS INSURANCE COMPANY, *Appellants.*

(284 P. 2d 1068)

Opinion filed June 11, 1955.

*Clayton S. Flood,* of Hays, argued the cause, and *E. C. Flood,* of Hays, and *C. I. Frieze,* of Kansas City, Missouri, were with him on the briefs for the appellants.

*William W. Dimmitt, Jr.,* of Topeka, argued the cause, and *Edward Rooney, Jacob A. Dickinson, David Prager,* and *Sam A. Crow,* all of Topeka, were with him on the briefs for the appellees.

The opinion of the court was delivered by

WERTZ, J.: These two actions were workmen's compensation cases. The separate claims of James and Wando Evans were consolidated for hearing before the commissioner of workmen's compensation, who denied the claims on the ground claimants were independent contractors. On appeal to the district court, the trial judge held claimants were not independent contractors and found the relationship of employer and employee to exist at the time of the accidental injuries to James and Wando Evans; that claimants' injuries arose out of and in the course of their employment, and that the parties were governed by the provisions of the workmen's compensation act and awarded compensation to both employees. The employer and the insurance carrier appeal.

The parties stipulated they were governed by the provisions of the workmen's compensation act *if* the relationship of employer and employee existed; that the insurance carrier was the Travelers Insurance Company; that claimants met with accidental injury on May 28, 1953; that respondent had notice of such accidental injuries; that written claims for compensation were served as required by law, and that respondent had made written election to come within the provisions of the workmen's compensation act prior to the date of the accident.

The question before the trial court was whether claimants Evans were at the time of their injuries acting as independent contractors, or whether they were employees of the respondent. That is not the question before this court. Under G. S. 1949, 44-556, the appellate jurisdiction of this court in compensation cases is confined to reviewing questions of law only. While we have the same transcript before us as the district court, it is not the province of

this court to determine whether the evidence duly weighed and considered in the light of the legal definition of independent contractor, or master and servant, supports one conclusion better than another. The question here is: "Was there evidence, whether opposed or not, warranting a reasonable inference, although a contrary inference might possibly be drawn, to sustain the judgment of the trial court?" (*Silvers v. Wakefield,* 176 Kan. 259, 270 P. 2d 259; *McDonald v. Rader,* 177 Kan. 249, 277 P. 2d 652; *Shue v. La-Gesse,* 173 Kan. 309, 245 P. 2d 966; *Burns v. Topeka Fence Erectors,* 174 Kan. 136, 254 P. 2d 285; *Rothman v. Globe Construction Co.,* 171 Kan. 572, 235 P. 2d 981; *Shay v. Hill,* 133 Kan. 157, 299 Pac. 263.)

There is little dispute as to the facts. Insofar as pertinent to the issues involved, they will be briefly stated: Respondent (appellant) is the governing body of the public schools in the City of Hays. Clyde U. Phillips for twenty-two years has been superintendent of schools and clerk of the board of education of the city. A. R. Miller for eighteen years has been head custodian and maintenance man over all the schools of the city, and the responsibility rested upon him for all the equipment in the school buildings and the proper operation of the heating plant. Some time in April, 1952, claimant James Evans checked the fireboxes in the Hays High School and was told by Mr. Miller to come back during the summer months when school was not in session and fix them. On May 27, 1953, claimant James Evans, called Mr. Phillips, superintendent, by telephone and told him he had checked the fireboxes at the school the previous year and they needed repairing. Mr. Phillips, in turn, inquired as to the cost and was advised the glazing material was $1.95 a pound, the insulating material 40 cents a pound, and it would take sixty or seventy pounds to do the job. It was agreed between the parties that claimants repair the boiler, and that claimant James Evans should report to Mr. Miller at the high school. After this conversation, claimants James and Wando Evans drove to Hays and saw Miller, head custodian, who pointed out to them the boiler to be repaired. After claimants had cleaned the firebox of the boiler, it appeared that the work as originally agreed upon would be insufficient to place it in a good state of repair. Mr. Miller looked into the firebox and said, "Yes, it is in bad shape." He had a conference with Mr. Phillips and then advised claimants that they desired to do additional repairing to place the firebox in

a good condition. Miller, being responsible for the proper operation of the heating plant, had experience in applying glazing materials, and had previously repaired the fireboxes of the boilers, and proceeded to direct claimants in their work. While claimants were cleaning the boiler, they were advised by Miller that instead of patching the flooring, as had been contemplated, they should tear out and replace all of it. As this required extra tools and material, claimants advised Miller they did not have the tools or material and they would need a pick, hoe, shovel and extra bricks. In response, Miller furnished the extra tools and material. In order to do the work as directed by Miller, claimants secured an additional employee. When claimants began laying bricks, Miller directed them to lay the larger surface of the bricks down, rather than laying the edge down, as claimants were doing. He also stated he wanted to check all the material, and did so. He examined the work of claimants and instructed them to make additional fills between bricks in specified places in the firebox. Miller directed claimants how the flooring was to be laid and insulated, how the target was to be built, and the calking of the seams to make the box airtight. While claimants were in the process of repairing the boiler and using the blowtorch in the firebox, an explosion occurred and, as a result, both were severely injured.

The itemized bill for claimants' work was submitted to Mr. Phillips, who took the acknowledgment verifying the claim as to its correctness, and claimants were paid by the respondent board of education for their work.

The principal question before this court is whether there was evidence to sustain the trial court's finding the relationship of employer-employee existed at the time of the accident?

It is the general rule that the term "independent contractor" is one who, exercising an independent employment, contracts to do a piece of work according to his own methods and without being subject to control of his employer, except as to the result of his work, and an independent contractor represents the will of his employer only in the result of his work and not as to the means by which it is accomplished. (*Pottorff v. Mining Co.*, 86 Kan. 774, 122 Pac. 120; *Shay v. Hill*, supra; *Mendel v. Fort Scott Hydraulic Cement Co.*, 147 Kan. 719, 78 P. 2d 868; *Bittle v. Shell Petroleum Corp.*, 147 Kan. 227, 231, 75 P. 2d 829.)

It is also a general rule that a master is a principal who employs

another to perform service in his affairs and who controls or has the right to control the physical conduct of the other in the performance of the service. A servant is a person employed by a master to perform service in his affairs whose physical conduct in the performance of the service is controlled or is subject to the right to control by the master. (*Hurla v. Capper Publications, Inc.*, 149 Kan. 369, 87 P. 2d 552; *Houdek v. Gloyd*, 152 Kan. 789, 794, 107 P. 2d 751; *Garner v. Martin*, 155 Kan. 12, 122 P. 2d 735.)

It is not the exercise of direction, supervision or control over a workman which determines whether he is a servant or an independent contractor, but the right to exercise such direction, supervision or control. (*Schroeder v. American Nat'l Bank*, 154 Kan. 721, 121 P. 2d 186; *Davis v. Julian*, 152 Kan. 749, 756, 107 P. 2d 745.)

In the instant case, not only was the right to control and restrict the work of claimants evident, but there was evidence that such control, supervision and direction over the method of accomplishing the work was exercised by agents of respondents. In the somewhat similar case of *Shay v. Hill*, 133 Kan. 157, 299 Pac. 263, the "right to control" test was applied. This was a claim by a dependent for compensation for the death of a workman. Shay collected bodies of dead animals and hauled them to the factory of Hill. Shay owned and furnished the truck, operated it at his own expense and was paid so much per pound for the animals he hauled. When Shay reached the animal to be transported, he was not permitted to handle it according to his own methods and by instrumentalities of his own choice. He was not allowed to cut up the animal in order to load it. He was required to load it and bring it in, just as it was when he found it—whole, or as it then might be mutilated. The result was in doing the particular thing he went out to do— getting the dead animal—the hauler was obliged to obey the will of his employer, and not his own will. We held, in affirming the trial court, whether Shay was an employee or an independent contractor was distinctively a matter of inference and, without pursuing the subject further, it was sufficient to say there was evidence from which the district court might fairly infer that Shay was an employee within the protection of the workmen's compensation act.

Also, in the somewhat similar case of *McKinstry v. Coal Co.*, 116 Kan. 192, 225 Pac. 743, 38 A. L. R. 837, the opinion reads:

"The defendant was operating a coal mine in Cherokee county. The plaintiff with his boy was digging coal for the defendant at sixty cents for each mine car of coal produced. The plaintiff furnished his own tools and supplied

his own material, such as powder, fuses, paper, etc., to be used in mining coal. The defendant argues that this made the plaintiff an independent contractor and took him out of the operation of the workmen's compensation act. . . . The plaintiff was an employee within the meaning of the workmen's compensation act." (pp. 193, 194.)

As heretofore related, respondent's agent, Miller, was experienced in the type of work being performed by claimants and instructed them as to the manner in which the work should be done. Moreover, he furnished the material and tools for claimants to accomplish the work. Applying the aforementioned rules of law to the facts in the instant case, and in view of the entire record, we have no hesitancy in concluding that there was ample testimony to support the trial court's finding that the relationship of employer and employee existed at the time claimants sustained their injuries, and that they were not independent contractors. The parties having stipulated that if such relationship did exist, they were bound by the workmen's compensation act, the trial court did not err in rendering judgment in accordance therewith.

Respondents next argue that neither Mr. Phillips, superintendent of the Hays schools and clerk of the board of education, nor Mr. Miller, head custodian for the schools, had the right to employ claimants, and under such circumstances respondents cannot be bound by their acts, and that in any event no contract was made with Wando Evans to perform any work. These questions were not raised in the court below, and respondents cannot for the first time raise them on appellate review. (*Evans v. Tibbetts,* 134 Kan. 131, 134, 4 P. 2d 399.) Under such circumstances, the questions need no further consideration.

Respondents contend that claimants failed in their proof as to their average weekly wages in that they offered no evidence as to the number of hours they customarily worked per day, how many days or how many weeks they worked per year. The uncontroverted evidence discloses that claimants each earned the sum of $100 per week; that their rate of pay averaged $4 to $5 per hour, and that their wages were based upon the charge of $1.95 per pound for glazing compound used, and 47 cents per pound for insulation used, and that these charges included their labor. It is disclosed by the record that the glazing compound cost claimants 43 cents per pound and that the extra $1.52 per pound was for their labor.

Employees are often paid by the piece or quantity, generally

known as piece work, and a workman who is paid wages by the piece or quantity comes within the workmen's compensation act, the same as one who is paid by the day. Labor may be by the hour, by the day, by the week, by the month, or by the piece. (*McKinstry v. Coal Co.*, supra.)

There was sufficient evidence to fix the basis on which to calculate the compensation that should be paid to claimants.

Other questions raised by respondents have been examined, but in view of what has been said are found to be without substantial merit insofar as they affect the conclusion reached by the trial court.

There was ample evidence to support the trial court's findings of the employer-employee relationship, that claimants' injuries arose out of and in the course of their employment, and to support the judgment rendered.

The judgment is affirmed.