No. 45,132

John C. Herrera, *Appellee*, v. A. D. Fulton Construction Company (Respondent), and Alliance Mutual Casualty Company (Insurance Carrier), *Appellants*.

(436 P. 2d 364)

Opinion filed January 27, 1968.

*Harrison Smith,* of Garden City, argued the cause and was on the briefs for the appellants.

*Lelyn J. Braun,* of Garden City, argued the cause, and *Dale H. Corley* and *Patrick J. Regan,* both of Garden City, were with him on the briefs for the appellee.

The opinion of the court was delivered by

Kaul, J.: This is an appeal by respondent and its insurance carrier from an award of workmen's compensation. The question involved is whether claimant was an employee or a partner of a subcontractor.

The appellant-respondent, sometimes referred to as Fulton, was engaged in the business of building houses. The respondent subcontracted with one Lewis L. Kemper and claimant (Herrera) to do bricklaying jobs and masonry work on some of its building projects. The appellants contend that claimant and Kemper held themselves out as partners and that claimant was a member of a subcontractor-partnership rather than an employee. Claimant contends he was not a partner of Kemper but merely an employee. After he suffered an injury claimant informed respondent that he was not a partner of Kemper and sought relief under respondent's workmen's compensation insurance. Claimant contended that even

though employed by Kemper he was engaged in work that was a part of respondent's business and under the provisions of K. S. A. 44-503 (*a*) respondent was liable as if claimant had been immediately employed by him. The workmen's compensation examiner awarded compensation. The respondent and insurance carrier appealed to the director who denied the claim. Claimant appealed to the district court which reversed the director and reinstated the examiner's award. Thereafter respondent and its insurance carrier perfected this appeal.

The trial court made comprehensive findings which may be summarized as follows: Claimant was a common laborer with an 8th grade education; that he worked as a mud tender for Lewis L. Kemper, a bricklayer, for about three months prior to the injury. Claimant was either paid $2 an hour or received a third of the profits made by him and Kemper on the job. Kemper got the jobs, made the bids on them, received the checks and divided the money. The trial court found that Kemper and claimant held themselves out to be partners but the claimant actually knew nothing about the construction business except his work as a mud tender, and that he merely followed Kemper's orders and did what he was told to do. The trial court concluded.

". . . The arrangement was a transparent attempt upon the part of Kemper to avoid the responsibilities of an employer. Claimant was merely an employee who was paid by getting a share of the profits. He had no part in making the decisions of the business and no say as to the bids, no say as to when and where or how the work was to be done. He took his orders from Kemper. The respondent, A. D. Fulton, is a general contractor, who is presumed to know at least the rudiments of his business. He was aware of the arrangement between Kemper and Herrera since they had worked upon other jobs for him and also since he was personally working on the job with them. He could see and observe the relationship between Kemper and Herrera. Regardless of what he might have been told by Kemper or even perhaps by Herrera, from his own knowledge of the contracting business and from his actual observations he either knew or should have known that Herrera was not actually a partner but was an employee. The Workmen's Compensation law is designed to protect working men. It is a complete and separate code of law unto itself and it cannot be evaded by any such transparent arrangement as attempted by Kemper in this case, Kemper was the sub-contractor of Fulton and the claimant was the employee of Kemper, and as such employee is covered by the workmen's compensation act and is entitled to recover herein."

The sole question confronting this court on review is whether there is sufficient substantial evidence to support the findings of

the trial court. The rules governing our review and the many decisions of this court, adhering thereto, are set out in *Phillips v. Skelly Oil Co.,* 189 Kan. 491, 370 P. 2d 65, are as follows:

". . . (1) it is the function of the trial court not that of the appellate court to pass upon the facts and this court has no jurisdiction over questions of fact on appeal under the Workmen's Compensation Act. . . .; (2) the question whether the disability of a workman is due to an accident arising out of and in the course of his employment is a question of fact and when it is determined by the district court will not be disturbed by this court where there is substantial evidence to sustain it . . .; (3) whether the judgment is supported by substantial competent evidence is a question of law as distinguished from a question of fact . . .; and (4) in reviewing the record to determine whether it contains substantial evidence to support the district court's judgment, this court is required to review all the evidence in the light most favorable to the party prevailing below, and if there is any evidence to support the judgment it must be affirmed even though the record discloses some evidence which might warrant the district court making a contrary decision. . . ." (pp. 492, 493.)

The basis for the award in this case is found in the provisions of K. S. A. 44-503 (*a*) which we quote in pertinent part as follows:

"(*a*) Where any person (in this section referred to as principal) undertakes to execute any work which is a part of his trade or business or which he has contracted to perform and contracts with any other person (in this section referred to as the contractor) for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal shall be liable to pay to any workman employed in the execution of the work any compensation under this act which he would have been liable to pay if that workman had been immediately employed by him; . . ."

The purpose of the statute quoted is to give employees of a subcontractor a remedy against a principal evading liability by contracting with outsiders to do part of the work which is undertaken by the principal. (*Schafer v. Kansas Soya Products Co.,* 187 Kan. 590, 358 P. 2d 737; *Durnil v. Grant,* 187 Kan. 327, 356 P. 2d 872; *Bailey v. Mosby Hotel Co.,* 160 Kan. 258, 160 P. 2d 701.)

Bearing in mind the rules limiting our review of the trial court's application of the statute quoted, we turn to the specific question whether there is substantial competent evidence to support the trial court's finding that claimant was an employee rather than a partner of subcontractor Kemper. The record discloses the respondent (contractor) furnished all the material, and the subcontractor (Kemper) owned and furnished all of the equipment. The work being done at the time of the injury was the bricking of a fireplace, and it was paid for on a per brick basis.

The claimant testified concerning his arrangement with Kemper as follows:

"Q. All right. Now, to get to the general work, what were you and Mr. Kemper doing for Mr. Fulton? A. Well, we was bricking a house.

"Q. Bricking a private residence? A. Yes, sir.

"Q. All right. Now, what kind of arrangement did you and Mr. Kemper have with Mr. Fulton? A. Well, I didn't have any arrangement. I just worked with Lewis and Lewis would give me a third of what we'd make on the job.

"Q. All right. Explain what you mean by 'Lewis would give me a third of what we'd make.' A. Well, on the job that we went on he'd either pay me $2 an hour or he would take and figure up whatever we made and I got a third of what the job was.

"Q. Now, were these jobs bid? A. Yes.

"Q. Well, how were they bid, John, if you know. A. Well, I don't know how they was bid because Lewis would bid on them and he'd say, 'We got to go to so and so place,' and I'd just go with him.

"Q. All right. And then how were you paid. A. Well, sometimes it would be—they made the check out to Lewis and I, or all the time, rather, and then we'd come in to the bank where he'd make a personal check to me of his own and he'd take the full amount."

## Lewis L. Kemper testified in part as follows:

"Q. Did you bring your books and records with you? A. There are none in existence.

.    .    .    .    .    .    .    .    .    .    .    .

"Q. Going to the issues in this case, on July 23, 1965, Mr. Kemper, who were you performing a contract for? A. We were—Well, we were working for A. D. Fulton Construction Co. on a contract.

"Q. Okay. What kind of a contract did you have with Mr. Fulton? A. We had two kinds there. The work was mixed enough—We put in a base for a fireplace, then we went up to start on the brick, on the outside, so at the time we were working with the brick it was a per brick basis.

"Q. How did you and Mr. _____ or who made the contracts? A. It is an oral contract, usually honored by bricklayers and contractors. I made it, mostly because of the experience in the work.

"Q. What kind of arrangement did you and Mr. Herrera have? A. We called ourselves partners and tried to set it up, all our business arrangements, in that manner.

"Q. How did you and Mr. Kemper settle up—I mean you and Mr. Herrera settle up your accounts? A. By taking the expenses off the top and then splitting the remainder, and there was a 33⅓-66⅔% split.

"Q. Yes. A. Of course, on this job it would just be a labor contract, no expenses over and above.

.    .    .    .    .    .    .    .    .    .    .    .

"Q. Now, Mr. Kemper, did you and John have any formal partnership, any articles or agreement you had entered into? A. Nothing in writing.

"Q. Nothing in writing. A. It was an oral agreement partnership.

"Q. Okay. Now, when you performed jobs for other contractors, and in particular Mr. Fulton, did he know that there was a partnership that was doing business with him? A. Yes, sir.

"Q. And was he so informed by you? A. Yes, sir.

"Q. Now, Mr. Kemper, while you were doing this work for Mr. Fulton would he at any time direct John to do anything on those job sites? A. No, sir, he didn't not on this—We have had him do it but—

"Q. Sir? A. Oh, sometimes they want you to rake or shovel or hoe but Mr. Fulton certainly never did suggest anything for John to-do.

"Q. All right. And anything John had to do then, as I understand it, would come from you? A. By agreement.

"Q. Well, but I mean—A. Yes.

"Q. —his orders and so forth were taken then from you? A. Yes, sir.

"Q. And when that particular job was finished how did you get paid? A. By check from A. D. Fulton Construction Co.

"Q. One other question, John—or Mr. Kemper: Did you and John Herrera have any formal partnership bank account? A. No, sir."

A. D. Fulton, the contractor, testified that he made the arrangements with Kemper but that he was contracting with Kemper and Herrera as a partnership and that they called themselves partners. Appellants argue that since Kemper and Herrera held themselves out as partners and, since Fulton relied on such representation Herrera is now estopped from denying his partnership with Kemper regardless whether or not such relationship actually existed. Claimant on the other hand argues that Fulton, as a general contractor, knew or should have known that claimant owned no equipment, was incapable of contracting or performing as a partner and was in fact nothing more than an employee-mud tender and, since Fulton was personally working on the same job, he could see and observe the relationship between Kemper and Herrera. Claimant further contends that both Kemper and Fulton had the right to control, direct, and supervise his work even though Fulton may not have often exercised such right.

Generally the question whether or not a workman was an independent contractor or employee depends upon the facts and circumstances of each particular case. (*Schroeder v. American Nat'l Bank*, 154 Kan. 721, 121 P. 2d 186; *Pottorff v. Mining Co.*, 86 Kan. 774, 122 Pac. 120.) It is the right to exercise direction, supervision, or control over a workman not the actual exercise thereof which determines whether he be a servant or independent contractor. (*Evans v. Board of Education of Hays*, 178 Kan. 275, 284 P. 2d 1068; *Garner v. Martin*, 155 Kan. 12, 122 P. 2d 735; *Hurla*

*v. Capper Publications, Inc.,* 149 Kan. 369, 87 P. 2d 552.) A fair analysis of the testimony in the instant case reveals that even though Fulton may not actually have exercised control over Herrera on the present job he had done so on other jobs, and his right to exercise such control over Herrera is not denied. The mere designation of a relationship by the parties as a partnership does not determine its true legal character. The conduct of the parties is far more significant than the name they used to describe the nature of their relationship. (*Grannell v. Wakefield,* 172 Kan. 685, 242 P. 2d 1075; *Wade v. Hornaday,* 92 Kan. 293, 140 Pac. 870.) In this case the evidence clearly establishes that Herrera was really no more than a mud tender or bricklayer's helper, subject to the orders and supervision of Kemper and, since there is no evidence of any sort of a formal partnership agreement or any other factors tending to show an actual partnership between Herrera and Kemper, we believe the trial court was justified in finding the existence of an employer-employee relationship, rather than that of a partnership. Without pursuing the subject further it is sufficient to say there is substantial competent evidence in this record to support the finding of the trial court that claimant was an employee within the protection of the Workmen's Compensation Act.

The judgment is affirmed.

FONTRON, J., dissenting: In view of the trial court's finding that the claimant and Kemper held themselves out to be partners, I am unable to concur in the court's opinion.

I think it elementary that parties who hold themselves out as partners are estopped to deny the existence of a partnership as against *third* persons who deal with them in reliance on their apparent relationship, and such is true even though there is in fact no true or legal partnership between the ostensible partners. (40 Am. Jur., Partnership, §§ 71, 72, pp. 178-180.) In 68 C. J. S., Partnership, § 32, p. 457, the rule is stated in this wise:

"Any act, representation, or conduct on the part of a person, reasonably calculated to induce the belief that he is a partner, constitutes a holding out, with respect to whether a partnership will be held to exist as to third persons. . . ."

This court has long recognized the rule. (*Rizer & Co. v. James,* 26 Kan. 221; *Woodward, Faxon & Co. v. Clark,* 30 Kan. 78, 2 Pac. 106; *Rider v. Hammell,* 63 Kan. 733, 66 Pac. 1026; *John Deere Plow*

*Co. v. Klaurens,* 153 Kan. 151, 109 P. 2d 98.) In *Clark v. Crouse,* 130 Kan. 177, 285 Pac. 577, we said:

". . . If a party permits his name to be used as a partner or by his statements and conduct indicates to the public that he is a partner, he will be estopped to deny responsibility. If he holds himself out as a partner, he may be held liable as far as third parties are concerned, although he may not in fact be a partner. This rule is based on the ground of estoppel, but is not to be applied when the third party has no knowledge of the holding out and who was not misled by the appearance produced. . . ." (p. 180.)

In my opinion, the evidence in this case clearly shows that claimant and Kemper held themselves out to be partners. The claimant, himself, so testified. Moreover, the testimony is undisputed that Fulton, the contractor, dealt with claimant and Kemper as partners, and paid them as such. Although the trial court stated that the contractor knew or should have known that claimant was not actually a partner, but an employee of Kemper, the record is entirely barren of any evidence to support such a conclusion.

The trial court asserted that the arrangement was a scheme by Kemper to avoid his responsibility as an employer and the evidence may justify such a conclusion, as the majority opinion points out. However, the issue is not Kemper's responsibility, but Fulton's. The uncontradicted testimony is that Kemper and claimant did hold themselves out to Fulton as partners, and that Fulton did contract with and pay them as partners.

I believe it must be said that Fulton's reliance on the apparent partnership reacted to his detriment, for his testimony, undenied, is that he required a certificate of insurance coverage when dealing with a subcontractor who employed help, but that he contracted with claimant and Kemper on the basis of a partnership. I find no evidence in the record from which it can be inferred that Fulton's reliance on the representations of claimant and Kemper was not in good faith.

For the foregoing reasons, I respectfully dissent.